## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SYNTHES (U.S.A.) and SYNTHES | : | |
| SPINE COMPANY, L.P., | : | |
| | : | CIVIL ACTION |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| GLOBUS MEDICAL, INC., DAVID C. | : | NO. 04-CV-1235 |
| PAUL, and RICHARD A. KIENZLE, | : | |
| | : | |
| Defendants | : | |
| | : | |

## <u>MEMORANDUM & ORDER</u>

**Stengel, J.**                                                    **Date: September 14, 2005**

Two competitors in the spinal implant disc industry are accusing each other of
unfair and illegal business practices.  Synthes (U.S.A.) and Synthes Spine Company, L.P.
("Synthes") filed this suit against rival Globus Medical, Inc. and former Synthes'
employees David Paul and Richard Kienzle ("Globus"), alleging that Globus improperly
used Synthes' confidential information, recruited Synthes' employees, and passed off
Synthes' products as their own.  Globus counterclaimed, alleging that Synthes used
improper marketing techniques and made defamatory statements about Globus and its
products in an effort to thwart Globus' growth in the spinal implant device industry.
Synthes moves to dismiss Counts I-VI of Globus' Amended Counterclaims, or in the
alternative, to strike paragraphs related to the alleged the improper marketing techniques.
I will grant Synthes' motion in part and deny it in part.

I.       **Factual Background**

Synthes manufactures, produces, and markets medical implants and devices, including plates, screws and rods for use in orthopedic surgery.  David Paul, formerly Synthes' Director of Product Development, and Richard Kienzle, Synthes' former Vice-President of the Northeast Area, resigned and created Globus Medical, Inc., now a competitor to Synthes.  Synthes contends that Globus improperly used resources and information Paul or Kienzle obtained during the course of their employment with Synthes, unlawfully recruited Synthes' employees, and improperly misappropriated and passed off Synthes' products.  In its Amended Complaint, Synthes alleges false and misleading advertising under the Lanham Act, 15 U.S.C. § 1125(a), misappropriation of trade secrets, civil conspiracy, breach of contract, tortious interference with contract, common law unfair competition, and breach of fiduciary duty.

Globus filed Amended Counterclaims primarily based on two allegations: First, Globus contends that Synthes defamed Globus' products and personnel in an effort to thwart its growth and undercut its position in the market.  Second, Globus alleges that Synthes maintained a so-called "Return on Investment" program, through which Synthes made illegal and inappropriate payments to physicians in return for business.  Globus argues this is a violation of the Medicare Criminal Fraud and Abuse Statute, 42 U.S.C. § 1320a-7b (the "Anti-Kickback provision").  Globus' twelve count Amended Counterclaim includes (1) defamation, (2) trade libel, (3) tortious interference with

prospective contractual relationships, (4) common law unfair competition, (5) civil conspiracy, and (6) violations of the Lanham Act.  Synthes filed a motion to dismiss Counts I through VI or, in the alternative, to strike those paragraphs of Globus' Amended Counterclaims which refer to Synthes' ROI program and the Anti-Kickback provision.

Judge Davis held oral argument on the motion to dismiss Globus' counterclaims and other related motions on March 11, 2005.  The case was then transferred to Judge Padova and subsequently reassigned to this court on May 13, 2005.  I have carefully reviewed the transcript of the oral argument before Judge Davis and the briefs of all parties.

## II.    Standard for Motion to Dismiss

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint.  Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987).  The court may grant a motion to dismiss only where "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  In deciding a motion to dismiss, the court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

III.    **Counts I and II: Defamation and Trade Libel**

A.      **Globus' Defamation Claim**

Globus avers that Synthes "made false and defamatory statements regarding the

nature, characteristics and qualities of Globus' products, ability to conduct its business,

financial stability, and business reputation that have harmed the reputation of Globus by

lowering Globus in the estimation of the community, including prospective purchasers

and users of Globus products." Amended Counterclaims ¶70. Globus cites the following

as examples of the defamatory statements allegedly made by Synthes:

[1]    [a Synthes' representative] falsely advised one surgeon that a former Synthes salesman, Robert Walden, now working for a distributor of Globus products, would <u>never</u> be able to service his hospital again;

[2]    that same representative, in an effort to dissuade Walden from leaving Synthes, told Mr. Walden that Synthes was planning to "drop a bomb" on Globus;

[3]    [a Synthes representative] falsely stat[ed] that Globus products have failed after implementation, specifically, that cervical plates were breaking and screws were backing out;

[4]    [a Synthes representative] falsely told [Synthes'] own personnel and other persons interested in joining Globus that Synthes was going to put Globus out of business because Globus has infringed Synthes' patents;

[5]    as a means of influencing a prominent former Synthes Regional Manager in sales, Daniel Pontecorvo, to reconsider his decision to leave Synthes and form a distributorship for Globus products, a Synthes division President told Mr. Pontecorvo that the judge assigned to this action was "wired" in favor of Synthes, and that Synthes was going to "crush" Globus in litigation costs and expenses;

4

[6]    in further attempt to dissuade Mr. Pontecorvo and another sales agent from leaving Synthes, another Synthes division president told these gentlemen that David Paul was "dangerous";

[7]    [a Synthes' representative] stat[ed] publicly that Globus has engaged in "unscrupulous business practices," a statement [Synthes] attributes, without verification as to the truth of the statement, as if with impunity, to an unnamed competitor's distribution.

[8]    [a Synthes' representative] expressed to others that the chairman and majority owner of Synthes, Hanjorg Wyss, had a personal vendetta against David Paul; furthermore, since Mr. Wyss has a estimated net worth of $5 billion, he would spare no expense in attempting to drown Globus in legal fees and drive it out of business.

Amended Counterclaims ¶35.[1]

To establish a prima facie case of defamation, Globus must prove that: (1) the communication was defamatory; (2) Synthes published the communication; (3) the communication applied to Globus; (4) the recipient understood the defamatory meaning; (5) the recipient understood the communication as intended to be applied to Globus; (6) Globus incurred special harm result from publication of the communication; (7) abuse of a conditional privilege.  42 PA. CONS. STA. ANN. § 8343(a).  Synthes moves to dismiss Globus' defamation claim on the basis that Globus failed to properly allege that the communications are defamatory in nature and failed to plead publication and special damages.

---

[1] The allegedly defamatory statements were not numbered in the pleadings.  I have numbered them here to clarify my analysis, but I will not separate them otherwise for purposes of the Motion to Dismiss.

Federal Rule of Civil Procedure 8(a) requires a short and plain statement of facts showing that the pleader is entitled to relief.  As the court noted in <u>Joyce v. Alti America, Inc.</u>, 2001 U.S. Dist. LEXIS 17432, at *7-8 (E.D. Pa. Sept. 27, 2001),

> under Rule 8(a), a defamation plaintiff does not have to plead the precise defamatory statements, nor must she specifically name the person who made the statements.  So long as the count provides sufficient notice to defendants, it states a claim.

(citing <u>Tuman v. Genesis Associates</u>, 935 F. Supp. 1375, 1391 (E.D. Pa. 1996)). Applying the liberal pleading standard under Rule 8(a) and reading the Amended Counterclaims as a whole, I find that Globus' allegations are sufficient to place Synthes on notice that Globus seeks to recover for statements made by Synthes' representatives to Globus' prospective employees and potential purchasers regarding Globus' products and business practices.

### 1.    The Defamatory Character of the Communications

Synthes contends that many of the alleged statements are mere opinions, and therefore, do not constitute defamation.  A statement is defamatory when "it tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  <u>12th Street Gym, Inc. v. Gen'l Star Indem.Co.</u>, 93 F.3d 1158, 1163 (3d Cir. 1996) (internal citations omitted).  A statement of opinion–as opposed to a statement of fact–may be considered defamatory "only if it implies the allegation of undisclosed defamatory facts as the basis for the

opinion." Restatement (Second) of Torts § 566 (1977).  In other words, such a

statement–also referred to as a "mixed opinion"–is capable of defamatory meaning if it

"is reasonably understood as implying the assertion of the existence of undisclosed facts

about the plaintiff that must be defamatory in order to justify the opinion." Id. at cmt. c.

Construing the Amended Counterclaims in the light most favorable to Globus, as I

must for purposes of a motion to dismiss, I find that the comments regarding Robert

Walden and David Paul - statements 1 and 6 - can be reasonably understood as

defamatory.  To say that David Paul is "dangerous" or that Robert Walden will "never

work in [a given] hospital again"[2] suggests that the speaker is aware of undisclosed facts

that may be defamatory.  The comment concerning Globus' infringement - statement 4 -

is potentially defamatory for another reason.  Though partially a statement of opinion, it

includes a statement of fact – namely, that Globus participated in illegal conduct by

infringing Synthes' patents – which could deter third persons from associating with

Globus or harm its reputation.  It is therefore sufficient to withstand the Motion to

Dismiss.

The three statements regarding Synthes' alleged abuse of the litigation

process–statements 2, 5 and 8–cannot reasonably be construed as defamatory because

Synthes' intent to "drop a bomb" on Globus, or to "crush" it in litigation costs is merely

---

[2] Globus may be able to establish facts about the relationship between Globus and
Walden to support its claim that the statement did in fact apply to it and that the surgeon
understood the statement as such.  Globus therefore fulfills the third requirement of a defamation
claim.

an expression of its anticipated actions. These statements, therefore, cannot serve as the basis for Globus' defamation claim.

### 2.     The Publication Requirement

Under the liberal federal pleading rules, the complaint need not identify the specific recipient of a defamatory communication in order to sufficiently allege publication.  Rather, identifying a category of recipients will suffice to overcome the pleading hurdle.  See, e.g., Cushman v. Trans Union Corp., 115 F.3d 220, 230 (3d Cir. 1997) (finding that statements made to "unidentified bill collector" sufficient to withstand summary judgment); Sabatowski v. Fisher Price Toys, 763 F. Supp. 705, 714 (W.D.N.Y. 1991) (concluding that statements made to "agents, servants, and employees of defendant" sufficient to plead publication).  Reading the Amended Counterclaims as a whole and drawing all inferences in favor of Globus, I find that Globus has sufficiently identified prospective Globus employees and purchasers as the recipients of the alleged communications.

### 3.     The Special Harm Requirement

Pennsylvania law also requires a showing of special damages to prove defamation.[3]  42 PA. CONS. STA. ANN. § 8343(a).  Federal Rule of Civil Procedure 9(g)

---

[3] "Typically considered as pecuniary loss, special damages are 'actual and concrete damages capable of being estimated in money, established by specific instances such as actual loss due to withdrawal of trade of particular customers, or actual loss due to refusal of credit by specific persons, all expressed in figures." Beverley Enterprises, Inc. v. Trump, 182 F.3d 183, 188 (3d Cir. 1999) (citations omitted).

requires that special damages be pled with specificity.  FED. R. CIV. P. 9(g).  However, where the alleged defamatory words "tend to impute to a business insolvency or credit unworthiness, lack of skill or competence in the trade, criminal conduct, or dishonesty or want of integrity," they are actionable per se, and proof of special damage is not necessary.  See Zerpol Corp. v. DMP Corp., 561 F. Supp. 404 (E.D. Pa. 1983).  In this case, at least some of alleged statements fall within this category, and therefore, special harm need not be pled specifically.[4]

### B.    Globus' Trade Libel Claim

Globus asserts that all of the statements that support its claim for defamation also subject Synthes to liability for trade libel.  The primary difference between defamation and trade libel is the nature of the interest each cause of action is designed to protect. See Zerpol Corp., 561 F. Supp. at 408 (E.D. Pa. 1983).   Whereas the action for defamation is intended to secure one's interest in character and reputation, an action for trade libel is calculated to protect against derogatory statements that affect the marketability of a party's goods or services.  Id. (citing Restatement (Second) of Torts § 623A, cmt. g.)

The publication of a disparaging statement concerning the product of another is actionable if: (1) the statement is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in

---

[4] For example, special damages need not be pled specifically for the statements 3, 4, 6.  I find that because those three statements are incorporated into Count I, the allegation is sufficient to survive the Motion to Dismiss.

pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity.  Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co., 570 Pa. 242, 246 (2002) (citing Restatement (Second) of Torts § 623A (1977)); Zerpol Corp., 561 F. Supp. at 409 (citing Restatement (Second) of Torts § 623A, cmt. g (1977)).  Of the eight statements that Globus cites in support of its defamation and trade libel claims, several concern Globus' products or services.[5]  Globus alleges that these statements were false, made with the intent to harm Globus, and that they have resulted in direct pecuniary loss.  Accepting this as true, I therefore find the allegations sufficient to state a claim for trade libel.[6]

## IV.   Count III-VI: Tortious Interference with Prospective Contractual Relations, Common Law Unfair Competition, Civil Conspiracy, and Violations of the Lanham Act

The role of the Anti-Kickback provision in these claims is central to an analysis of Globus' position.  The Anti-Kickback provision of the Medicare Criminal Fraud and Abuse Act makes it illegal to offer or pay remuneration, directly or indirectly, to induce the purchase of items or services reimbursable under Medicare.  42 U.S.C. §§ 1320a-

---

[5] See, e.g. statements 1, 3 and 7.  I find that because the trade libel count includes the three specific products or services allegations, Count II, as a whole, is sufficient to survive the Motion to Dismiss.

[6] I note that the claims of trade libel and defamation both refer to statements that, if proven, could well give rise to a right to recover.  I further note that the special harm requirement appears to be met by some of the alleged statements, and does not appear to be met by others. For purposes of this Motion to Dismiss, I will leave it to the parties to discover whether any special damages were suffered by Globus.  Whether those special damages, if any, create a basis for recovery is an issue that can be addressed at trial.

7b(b).   The viability of Counts III-VI of Globus' Amended Counterclaims turns, in part, on whether conduct which violates the Anti-Kickback provision may serve as a factual predicate for Globus' claims of tortious interference with prospective contractual relations, unfair competition, civil conspiracy, and Lanham Act violations.  Globus alleges that Synthes provided "'unrestricted research grants' and 'unrestricted educational grants,' in the form of cash, cash equivalents, and all-expense paid trips to lavish resort areas for physicians and their spouse in exchange for a physician's commitment to use, prescribe, or request Synthes' products," Amended Counterclaims ¶23, and that these grants were illegal.

The parties agree that there is no private right of action under the Medicare Criminal Fraud and Abuse statute.  See Pl.'s Mem. Supp. Dismiss, at p. 6; Def.'s Mem. Opp. Dismiss, at p. 17; see also West Allis Mem. Hosp., Inc. v. Bowen, 852 F.2d 251, 253 (7th Cir. 1988).  While several courts have found that a plaintiff cannot use alleged violations of the Anti-Kickback provision to support a claim for civil liability under another state or federal law, see, e.g., Action Ambulance Serv. Inc. v. Atl. Health Servs., Inc., 815 F.Supp. 33, 40 (D. Mass. 1993) (noting that to do so would "allow an end run around the entire implied right of action inquiry")[7], others "have left open the possibility

_____

[7] As pointed out by counsel, at a status conference held on August 22, 2005, two recent cases, U.S.A. ex rel. Schmidt v. Zimmer, Inc., 2005 WL 1806502, No. 00-1044 (E.D. Pa. July 29, 2004) and Medtronic Navigation, Inc. v. Brainlab Medizinische Computersystems GMBH, 2005 WL 1661081, No. 98-1072 (D.Colo. July 14, 2005) are in accord that the Anti-Kickback provision provides no private right of action.

that conduct allegedly violating the anti-kickback statute may form the basis for liability under some recognized common law cause of action, assuming all other element of the cause of action are present." Reliable Ambulance Serv., Inc. v. Mercy Hosp. of Laredo, 2003 Tex. App. LEXIS 10934, at n.1 (Tex. App. 2003) (citing Donovan v. Rothman, 106 F. Supp. 2d 513, 517-18 (S.D. N.Y. 2000); State Med. Oxygen & Supply, Inc. v. Amer. Med. Oxygen Co., 230 Mont. 456, 462-63, 750 P.2d 1085 (Mont. 1988)); see also American Health Systems, Inc. v. Visiting Nurse Association of Greater Philadelphia, 1994 WL 314313 (E.D. Pa. June 29, 1994).

In American Health, the defendant sought dismissal of plaintiff's RICO claim because it claimed that "[t]he predicate acts of racketeering activity asserted by AHS...are fundamentally claims of violations of section 1320a-7b, for which there is no private cause of action." Id. at *4. The court concluded that "defendants are not insulated from civil liability simply because their alleged fraudulent conduct also violated a criminal statute." Id. at *5. I agree with the reasoning in American Health Systems. The mere fact the Anti-Kickback provision prohibits Synthes' conduct does not mean that the same conduct cannot provide a basis for civil liability under another state or federal statute. The question then is whether the underlying conduct violates Pennsylvania state law. I find that it does not. Absent the Anti-Kickback implications, the underlying conduct itself - i.e., sponsoring conferences, providing research grants, and offering promotional incentives - is not inherently unfair or tortious. Nevertheless, I find that on some counts,

Globus has sufficiently articulated claims of tortious interference and unfair competition, independent of the allegations regarding the ROI program.  I will deny in part and grant in part Synthes' Motion to Dismiss those claims.

### A.    Count III:  Tortious Interference with Prospective Contractual Relationships

Globus incorporates all of its factual allegations in its claim for tortious interference with prospective contractual relationships.  In Paragraph 85, Globus specifically states that Synthes "intended to harm Globus by unfairly competing using improper marketing techniques and maliciously interfering with Globus' prospective contractual relationships by intending to prevent those relationships from occurring." Amended Counterclaim ¶85. Globus further alleges that Synthes "attempted to, and has, tortiously interfered with Globus' reasonable expectation of economic advantage and prospective contractual relationships with anticipated purchasers and users of products manufactured and/or distributed by Globus."  Def.'s Counterclaim ¶82.

Pennsylvania recognizes the <u>Restatement (Second) of Torts</u> definition of intentional interference with contract.  <u>Adler, Barish, Daniels, Levin and Creskoff</u>, 482 Pa. 416, 431-33 (Pa. 1978).  Section 766B of the <u>Restatement</u> provides:

> One who intentionally and improperly interferes with the prospective contractual relation (except a contract to marry) is subject to liability to the other for pecuniary harm from loss of the benefits of the relation, whether the interference consists of:
> (a) inducing or otherwise causing a third person not to enter into or continue a prospective relation or

> (b) preventing the other from acquiring or continuing the
> prospective relation.

Restatement (Second) Torts § 766B (1979).  "In determining whether an actor's conduct

in intentionally interfering with an existing contract or a prospective contractual relation

of another is improper or not," Pennsylvania courts consider the following factors:

> (a) The nature of the actor's conduct,
> (b) The actor's motive,
> (c) The interests of the other with which the actor's conduct
> interferes,
> (d) The interests sought to be advanced by the actor,
> (e) The proximity or remoteness of the actor's conduct to the
> interference and
> (f) The relations between the parties.

Adler, Barish, 482 Pa. at 432 (quoting Restatement (Second) of Torts § 767).  To prove

tortious interference with prospective contractual relations under Pennsylvania law,

Globus must establish that: (1) it had a prospective contractual relationship with a third

party; (2) Synthes had a purpose or intent to harm Globus by preventing the relationship

from occurring; (3) the absence of privilege or justification with respect to Synthes'

conduct; and (4) the occurrence of actual damage as a result of the conduct.  Advent Sys.,

Lt. V. Unisys Corp., 925 F.2d 670, 672 (3d Cir. 1991).  Synthes seeks dismissal of the

tortious interference claim on grounds that Globus has not adequately identified any

potential contracts with which Synthes interfered and has failed to plead the requisite

intent necessary to maintain a cause of action.

14

The Pennsylvania Supreme Court has defined a "prospective contractual relation" as "something less than a contractual right, but something more than a mere hope." Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 471 (Pa. 1979). A plaintiff must therefore establish a "reasonable probability" that a contractual relationship would have been established absent the defendant's tortious conduct. See, e.g. Santana Products, Inc. v. Bobrick Washroom Equipment, Inc., 401 F.3d 123, 140 (3d Cir. 2005). However, because such prospective relationships are "not susceptible of a definite, exacting identification," a plaintiff is not required to identify a potential contractual partner by name. Kelly-Springfield Tire Co. v. D'Ambro, 596 A.2d 867 (Pa. 1991) (holding that plaintiff did not have to identify a specific potential purchaser to withstand motion to dismiss under state pleading standard); see also Dunlap v. Peco Energy, 1996 WL 617777 (E.D. Pa. Oct. 23, 1996) (finding that plaintiff's allegation that defendant had interfered with "a business expectancy in contracts....to the energy industry" sufficient for purposes of motion to dismiss); Amer. Health, 1994 WL 314313, at *14 (noting that "although...the amended complaint simply states that 'Plaintiff had and has prospects of contractual relations with home care patients found in the relevant geographic market,' I am persuaded by all of the allegations in the complaint that plaintiff has alleged more than a 'mere hope' of prospective relations with home health care patients.").

In this case, Globus alleges that Synthes' defamatory statements were directed toward potential employees, users, and purchasers of Globus' products. Considering

15

Globus' Amended Counterclaims as a whole, and in light of the liberal pleading standard of Rule 8(a), I find that Globus allegations of prospective contractual relationships are sufficient at this stage in the litigation.

Synthes' contention that Globus has failed to plead intent is premised on its argument that the only allegations which support the tortious interference with contract claim are those involving the ROI program. This is inaccurate. The ROI program is one of two grounds that Globus alleges as a basis for its tortious interference claim. Globus' claim is based on two independent grounds; Synthes' alleged improper marketing strategy and its defamatory statements. Globus pleads that Synthes intended to harm Globus by engaging in this conduct and therefore has sufficiently pleaded the intent element. I will deny Synthes' motion to dismiss this claim.

### B.       Count IV: Common Law Unfair Competition Law

Globus' allegations in the Amended Counterclaims are also sufficient to support its claim for unfair competition. As the Pennsylvania Supreme Court noted in <u>Pottstown Daily News Publishing Co. v. Pottstown Broadcasting Co.</u>, 411 Pa. 383, 391 (1963) (quoting <u>A.L. Schecter Poultry Corp. v. United States</u>, 295 U.S. 495, 531 (1935)), "[u]nfair competition, as known to the common law, is a limited concept. Primarily, and strictly, it relates to the palming off of one's goods as those of a rival trader." However, the court further explained: "In recent years its scope has been extended. It has been held to apply to misappropriation as well as misrepresentation." <u>Id</u>. Pennsylvania courts have

16

recognized a cause of action for the common law tort of unfair competition where there is

evidence of, among other things, trademark, trade name, and patent rights infringement,

misrepresentation, tortious interference with contract, improper inducement of another's

employees, and unlawful use of confidential information. See ID Security Sys. Canada,

Inc. v. Checkpoint Sys., Inc., 249 F. Supp.2d 622, 688 (E.D. Pa. 2003) (tortious

interference with contract); Albee Homes, Inc. v. Caddie Homes, Inc., 207 A.2d 771 (Pa.

1965) (inducement of another's employees); Morgan's Home Equip. Corp. v. Martucci,

390 Pa. 618, 635 (Pa. 1957) (trading on another's reputation); Goebel Brewing Co. v.

Esslingers, Inc., 95 A.2d 523 (Pa. 1953) (trademark and trade name infringement).

   The Restatement (Third) of Unfair Competition, which several Pennsylvania

courts have cited but not specifically adopted, recognizes several specific categories of

commercial behavior that give rise to a claim of unfair competition, including: (1)

deceptive marketing, (2) infringement of trademark and other protectable intellectual

property rights, (3) misappropriation of trade secrets and other intangible trade values,

and (4) acts or practices that are actionable under federal or state statutes.   Restatement

(Third) of Unfair Competition § 1 (1995). The Restatement also includes a "catch-all" or

"residual" category which includes "other acts or practices determined to be actionable as

an unfair method of competition, taking into account the nature of the conduct and its

likely effect on both the person seeking relief and the public." Id. § 1.  Comment g of this

section explains the rationale underpinning the "catch-all" provision:

> A primary purpose of the law of unfair competition is the
> identification and redress of business practices that hinder
> rather than promote the efficient operation of the market.
> Certain recurring patterns of objectionable practices form the
> basis of the traditional categories of liability specifically
> enumerated in [§ 1].  However, these specific forms of unfair
> competition do not fully exhaust the scope of statutory or
> common law liability for unfair methods of competition, and
> [the Restatement] therefore includes a residual category
> encompassing other business practices determined to be
> unfair.

Id. at cmt. G.  The comment identifies several business practices that would fall under this

"catch-all" category, such as interfering with the business of another by acts or threats of

violence, instituting or threatening to institute groundless litigation, engaging in

defamation, and establishing or maintaining an unlawful restraint of trade.  Id.

The Pennsylvania Supreme Court has never specifically adopted the Restatement's

definition, but lower state courts and federal courts sitting in diversity have recognized

causes of action for unfair competition based the Restatement categories, and at least one

Pennsylvania court and the Eastern District of Pennsylvania have cited the "catch-all"

provision of the Restatement as a basis for a cause of action for common law unfair

competition.  See ID Security Sys. Canada, Inc. v. Checkpoint Sys., Inc., 249 F. Supp. 2d

622, 688-89 (E.D. Pa. 2003) (citing the Restatement as support for finding that a claim of

tortious interference with contract could be the basis for an unfair competition claim

under Pennsylvania law); Yeager's Fuel, Inc. v. Pennsylvania Power & Light Co., 953 F.

Supp. 617, 667-68 (E.D. Pa. 1997); Lakeview Ambulance and Med. Serv., Inc. v. Gold

Cross Ambulance, 1995 WL 842000 (Pa. Com. Pl., Oct. 18, 1995) (finding a cause of action for unfair competition where a competitor made defamatory statements regarding plaintiff's quality of service).

Synthes contends that Globus has failed to state a claim for unfair competition because a violation of the Anti-Kickback provision cannot be the basis for a Pennsylvania unfair competition law claim. Although I agree with Synthes' argument with respect to the Anti-Kickback provision, I nevertheless find that in stating a claim for defamation, trade libel and tortious interference with contract, Globus has pleaded sufficient facts to support a cause of action for unfair competition. Therefore, I will deny Synthes' motion to dismiss this claim.

### C.    Count V:  Civil Conspiracy

In its Amended Counterclaims, Globus alleges that Synthes Spine Company, Inc. and Synthes (U.S.A.), along with others, engaged in civil conspiracy. Civil conspiracy is a state common law claim that requires proof of a combination or agreement between two or more persons to do an unlawful and overt act which causes legal damage to the plaintiff. Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (1979); Rutherford v. Presbyterian-University, 612 A.2d 500 (1992). A civil conspiracy claim depends upon the commission of an underlying tortious act; it is not an independent tort. Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 407 (3d Cir. 2000) ("'Since liability for conspiracy depends on performance of some underlying tortious act, the conspiracy is not

19

independently actionable; rather, it is a means of establishing vicarious liability for an underlying tort.'") (quoting Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983)). Globus must therefore properly allege the commission of a tort in order to succeed on its claim of civil conspiracy.  Though Globus alleged four torts in this case, only those acts related to the Anti-Kickback allegations and the ROI program were enumerated as elements of the civil conspiracy.  As I am granting Synthes' Motion to Dismiss the Anti-Kickback allegations, for the reasons discussed above, and because I find that Globus alleged civil conspiracy only with regard to the ROI program, I will also grant Synthes' Motion to Dismiss the civil conspiracy claim.

**D.      Count VI: Lanham Act False Advertising**

In Count VI of the Amended Counterclaims, Globus alleges that Synthes engaged in unfair competition and thereby violated the Lanham Act, 15 U.S.C. 1125(a)(1)(B), by making false and disparaging remarks about Globus' products and services and making misleading statements about the quality of its own goods and services.

In relevant part, § 1125(a)(1)(B) creates a cause of action against any person who uses "any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which...in commercial advertising or promotion,

20

misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities."[8]

An action under the Lanham Act is distinct from one for mere commercial disparagement and defamation because it "is not a cause of action for maligning the company itself, but rather a remedy for misrepresentation in advertising about a particular product or commercial service."  Synygy, 51 F. Supp.2d at 578.  In this case, Globus' claim is devoid of any false designations or commercial misrepresentations made by Synthes regarding its own products, or Globus', to Globus' detriment.  I will therefore grant Synthes' motion to dismiss Globus' claim for violations of the Lanham Act.

### IV.    Synthes' Alternative Motion to Strike

Synthes requests, in the alternative, that all references to the Anti-Kickback provision and the ROI program be stricken.  Federal Rule of Civil Procedure 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f). "[T]he 'standard for striking under Rule 12(f) is strict' and... 'only allegations that are so unrelated to plaintiffs' claims as to be unworthy of any consideration' should be

---

[8] "Commercial advertising or promotion" within the meaning of § 1125(a)(1)(B) consists of: (1) commercial speech; (2) by a defendant in commercial competition with the plaintiff; (3) designed to influence customers to buy the defendant's products; (4) that is sufficiently disseminated to the relevant purchasing public to constitute advertising or promotion within the industry.  Synygy v. Scott-Levin, Inc., 51 F. Supp. 2d 570, 576 (E.D. Pa. 1999); J & M Turner, Inc. v. Applied Bolting Tech. Products, 1997 U.S. Dist. LEXIS 1835, at *49 (E.D. Pa. Feb. 20, 1997).

stricken." <u>Lakits v. York</u>, 258 F. Supp. 2d 401, 409 (E.D. Pa. 2003) (quoting <u>In re Cantella and E.F. Hutton and Co., Inc.</u>, 583 F. Supp. 1388, 1400 (E.D. Pa. 1984)).  As discussed above, neither a violation of the Anti-Kickback provision nor the underlying ROI program absent the Anti-Kickback implications can support Globus' state law claims for tortious interference with prospective contractual relationships and unfair competition.[9]  Therefore, those paragraphs related to the alleged ROI program and violations of the Anti-Kickback provision are superfluous and immaterial - at least with respect to Globus' counterclaims - and therefore should be stricken.

## VI.    Synthes' Motion to Dismiss Counterclaims by David Paul and Richard Kienzle

Finally, Synthes moves to dismiss Counts I through VI of the Amended Counterclaims asserted on behalf of individual Defendants Kienzle and Paul.

As a general rule, "a stockholder, director, officer, or employee of a corporation has no personal or individual right of action against third persons for damages that result indirectly to the individual because of an injury to the corporation." <u>Temp-Way v. Continental Bank</u>, 1992 U.S. Dist. LEXIS 3046, at **44 (E.D. Pa. March 16, 1992) (citations omitted).  Further, under FRCP 17(a), "[t]o qualify as a real party in interest, the plaintiff must possess a right to relief under the substantive law creating the right that he

---

[9] This analysis is consistent with my findings on Counts III and IV, where the allegations of  underlying defamatory statements - but not the ROI program - were sufficient to support Globus' claims of tortious interference and common law unfair competition for purposes of this motion to dismiss.

is suing upon." <u>DeLor v. ATX Telecoms. Servs.</u>, 1996 U.S. Dist. LEXIS 8825, at *5 (E.D. Pa. June 25, 1996) (citations omitted).

Kienzle and Paul, as officers of Globus, have no claim against Synthes for Counts II-VI because there are no allegations in the Amended Counterclaims that these Defendants suffered any separate and distinct harm.  I find that none of the counterclaims allege any harm directly to Kienzle.  Further, I find that with the exception of the defamation claim, none of the counterclaims allege any harm directly to Paul.  I therefore will grant Synthes' Motion to Dismiss Claims I-VI brought on behalf of Kienzle individually, and Claims II-VI brought on behalf of Paul individually.

## VII.   Conclusion

Construing the Amended Counterclaims in the light most favorable to the complaining party, I find that Defendants have sufficiently stated a cause of action for defamation, trade libel, tortious interference with prospective contractual relationships, and common law unfair competition, on behalf of Globus Medical, Inc.  However, because Defendants' allegations are insufficient to support for violations of the Lanham Act, I will grant Synthes' Motion to dismiss Counts V and VI of the Amended Counterclaims.

David Paul has also sufficiently pleaded a cause of action for defamation. However, because Mssrs. Paul and Kienzle have otherwise failed to allege that they have incurred any separate and distinct harm as a result of Synthes' conduct, I will dismiss

Counts I-VI insofar as those claims are brought by Mr. Kienzle and Counts II-VI insofar as they are brought by Mr. Paul.

With respect to Synthes' alternative motion to strike, I find that the allegations related to the ROI program are not relevant or material, at least with respect to Globus' counterclaims, and I will therefore grant Synthes' motion to strike paragraphs 22-24, 87, 89, 94-105, 110, and 116-17.

**ORDER**

**AND NOW**, this        day of September, 2005, upon consideration of the Counter-claim

Defendant Synthes' Motion to Dismiss Counts I-VI of Defendants' Amended

Counterclaims or, in the Alternative, to Strike, it is hereby **ORDERED** that:

(1) Counter-Claim Defendant Synthes' Motion to Dismiss Counts V and VI of the

Amended Counterclaims is **GRANTED**;

(2) Counter-Claim Defendant Synthes' Motion to Dismiss Counts I-VI insofar as

those claims are brought by Mr. Kienzle is **GRANTED**;

(3) Counter-Claim Defendant Synthes' Motion to Dismiss Counts II-VI insofar as

they are brought by Mr. Paul is **GRANTED**;

(4) Synthes' Motion to Strike is **GRANTED** as to paragraphs 22-24, 87, 89, 94-

105, 110, and 116-17 of the Amended Counterclaims.

(5) Counter-Claim Defendant Synthes' Motion to Dismiss Counts I-IV insofar as

they are brought by Globus is **DENIED**.


_____

Stengel, J.

25