**UNITED STATES DISTRICT COURT FOR**

**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SYNTHES (U.S.A.), et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | **Civil Action No. 04-CV-1235** |
| | : | |
| **v.** | : | **Hon. Lawrence Stengel** |
| | : | |
| **GLOBUS MEDICAL, INC., et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

## I. INTRODUCTION

Plaintiffs Synthes (U.S.A.) and Synthes Spine Company, L.P. (collectively, "Synthes") have sought leave to file a Second Amended Complaint which alleges, among other new counts, Count X for violations of the Computer Fraud and Abuse Act ("CFAA") against individual defendants David C. Paul and Richard A. Kienzle (collectively, "Defendants"). Synthes mistakes the remedial purpose of the CFAA by attempting to shoehorn what is essentially an unfair competition claim into a federal statutory offense designed to prevent interstate and foreign computer hacking.

There are at least two fatal errors in Count X of Synthes' proposed Second Amended Complaint. First, Synthes has failed to even plead any facts that would establish the jurisdictional threshold of the CFAA, which requires that to bring a civil action, there must be "loss" aggregating at least $5,000 that is related to the costs of investigating or remedying damage to a computer. Nowhere in the proposed Second Amended Complaint does Synthes even quantify its damage claim, let alone suggest that its "loss" is the result of anything other than lost business, which clearly is not the type of loss recoverable under the CFAA. Moreover, Synthes has failed to allege (nor can

it) facts that would prove that Defendants "conduct involved an interstate or foreign communication" as required by the plain language of the CFAA. These fundamental inadequacies render Count X futile and, therefore, Synthes' motion for leave to file a Second Amended Complaint asserting violations of the CFAA must be denied.

## II. PROCEDURAL HISTORY AND RELEVANT FACTUAL BACKGROUND

On March 22, 2004, Synthes filed its Complaint, which it amended as of right without leave of Court on March 31, 2004. In its Amended Complaint, Synthes alleged eight counts, including unfair competition, misappropriation of trade secrets, civil conspiracy, and breaches of contract and fiduciary duty. On September 25, 2005, Synthes filed Plaintiffs' Motion for Leave to File a Second Amended Complaint, which alleges, among other new counts, Count X against Defendants for violations of the CFAA, 18 U.S.C. § 1930(a)(2)(C) .

The essential allegations in support of Count X of the proposed Second Amended Complaint are that Synthes suffered damages and irreparable harm when Defendants"used their computers to gain access to Synthes' confidential and trade secret information" and that Defendants used this allegedly illegally obtained information with the knowledge and intent to develop the same or similar products and unfairly compete with Synthes. *See* Proposed Second Am. Compl. ¶¶ 114-117. In support of this new claim, Synthes' alleged: "[u]pon information and belief, Kienzle and Paul and/or others on their behalf obtained this confidential and proprietary business information, at least in part, by using Synthes' computers and accessing these computers without authorization or exceeding their authorized access to this information." Proposed Second Am. Compl., ¶ 45.

# III. ARGUMENT

## A. Legal Standard

Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires," the decision whether to grant or deny a motion for leave to amend is within the sound discretion of the District Court. *Freedom Int'l Trucks, Inc. of New Jersey v. Eagle Enter., Inc.*, 182 F.R.D. 172, 174 (E.D.Pa. 1998). Factors which militate against granting leave to amend include the futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Flynn v. Health Advocate, Inc.*, No. Civ.A. 03-3764, 2004 WL 1588235, *4 (E.D. Pa. Jul. 8, 2004).

An amendment is futile when the amendment would not withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *McCurdy v. Wedgewood Capital Mnmt Co., Inc.*, No. Civ. A. 97-4303, 1999 WL 391494, * 2 (E.D. Pa. May 28, 1999) (citing, *inter alia, Adams v. Gould*, 739 F.2d 858, 864 (3d Cir. 1984), *cert. denied,* 469 U.S. 1122 (1985)); *Macario v. Pratt & Whitney Canada,* Inc., Civ.A.No. 86-4951, 1989 WL 135360, * 1 (E.D. Pa. Nov. 7, 1989) (citing *Massarsky v. Gen'l Motors Corp.*, 706 F.2d 111 (3d Cir. 1983), *cert. denied,* 464 U.S. 937 (1983). Under this standard, the Court must accept as true the allegations in the proposed pleadings and construe those allegations in the light most favorable to the moving party. *McCurdy,* 1999 WL 391494, at * 3 and fn. 6 (citations omitted). Nevertheless, "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[1]

---

1 *See, e.g., Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 74 (3d Cir. 1994) (upholding denial of plaintiffs' motion to amend the complaint to add a new legal theory of liability for violation of RICO on the basis that the amendment was futile since it did not allege that plaintiff was injured by defendant's conduct); *Arab African Int'l Bank v. Epstein,* 10 F.3d 168, 175 (3d Cir. 1993) (upholding district court's denial of leave to amend complaint where

*Id.* In making its determination as to whether a cognizable claim has been made, the Court "need not accept as true conclusory allegations of law, conclusions unsupported by the facts alleged or unwarranted inferences." *Id.* (citations omitted).

**B. Synthes' Proposed Amendment Does Not Meet The Jurisdictional Threshold of the Computer Fraud and Abuse Act**

Section 1030(g) of the CFAA sets the jurisdictional threshold for any civil action brought under the statute. A civil action for a violation of the CFAA may be brought ***only*** if the conduct involves one of the factors set forth in clauses (i) - (v) of subsection (a)(5)(B). 18 U.S.C. § 1030(g). The only applicable clause is (i), which requires the "loss to 1 or more persons during any 1-year period ... aggregating at least $5,000 in value...." *Id.* § 1030(a)(5)(B)(i).[2] The CFAA defines "loss" as:

> any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages ***incurred because of interruption of service***.

18 U.S.C. § 1030(e)(11) (emphasis added). "Damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information." *Id.* § 1030(e)(8). Synthes must meet "this jurisdictional threshold" in order to sue under the CFAA. *See Nexans Wires S.A. v.*

---

proposed RICO claim was time-barred and, hence, amending the complaint would be futile); *Boarhead Farm Agreement Group v. Advanced Environ. Tech. Corp.*, 381 F. Supp.2d 427, 435 (E.D. Pa. 2005) (denying plaintiff's motion for leave to file a proposed amendment adding a cause of action under CERCLA on the basis that controlling Third Circuit law barred the claim).

[2] The other subsections of § 1030(a)(5)(B)(i), refer to modification or impairment of a medical examination, physical injury to a person, threat to public health or safety, or damage affecting a computer system used by or for a government entity, and are not relevant to Synthes' claims in this case. *See* 18 U.S.C. § 1030(a)(5)(B) (ii) - (v).

*Sark-USA, Inc.*, 319 F. Supp.2d 468, 472 (S.D.N.Y. 2004).[3]

In *Nexans Wires*, the Court extensively analyzed this jurisdictional threshold, concluding that:

> 'loss' means any remedial costs of investigating the computer for damage, remedying the damage and any costs incurred because the computer cannot function while or until repairs are made. However, ***there is nothing to suggest that the 'loss' or costs alleged can be unrelated to the computer***.

*Id.* at 474 (emphasis added); *see also id.* at 475 ("the meaning of 'loss' both before and after the term was defined by statute, has consistently meant a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted").[4]

In *Nexans Wires,* plaintiffs sued their competitors for misappropriation of trade secrets, unfair competition, tortious interference with prospective economic advantage, conversion, and violations of the CFAA based on allegations that defendants induced others to steal plaintiffs' proprietary information from their computer system. The court specifically addressed the issue of whether lost revenues (resulting from the loss of two specific business opportunities), constituted

---

3 Neither this Court, nor the United States Court of Appeals for the Third Circuit, has interpreted the CFAA. While, in *Flynn,* 2004 WL 1588235 (E.D. Pa.), the plaintiff sought leave to amend the complaint to add violations of the CFAA, the defendants did not oppose the amendment adding the CFAA claims and, therefore, the Court did not address that issue.

4 *See also, e.g., EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 584-85 (1st Cir. 2001) (awarding costs of assessing damages); *U.S. v. Middleton,* 231 F.3d 1207, 1213-14 (9th Cir. 2002) (awarding costs of "investigating and repairing the damage"); *Tyco Int'l v. John Does*, No. 01Civ. 3856, 2003 WL 21638205 (S.D.N.Y. Jul. 11, 2003) ("beyond mere physical damage to property, the additional types of damages awarded by courts under the Act have generally been limited to those costs necessary to assess the damage caused to the plaintiff's ***computer*** system or to resecure the system in the wake of a hacking attack) (emphasis added); *In re DoubleClick, Inc. Privacy Litigation*, 154 F. Supp.2d 497, 525 n.34 (S.D.N.Y. 2001) (dismissing Computer Fraud Statute claim where the statute was intended to guard against "damage to computer systems and electronic information by hackers").

"loss" under § 1030(e)(11). The court held that "revenue lost because the information was used by the defendant to unfairly compete after extraction from a computer does not appear to be the type of 'loss' contemplated by the statute."[5] *Id.* at 478[6]; *see also Register.com, Inc. v. Verio, Inc.*, 126 F. Supp.2d 238, 252 n.12 (S.D.N.Y. 2000), *aff'd*, 356 F.3d 393 (2d Cir. 2004) (holding that lost business and good will resulting from the defendant's "end use" of information retrieved from plaintiff's website was not the type of harm addressed by the Computer Fraud Statute; "[h]ow [the defendant] uses the . . . data, once extracted has no bearing on whether [defendant] has impaired the availability or integrity of [plaintiff's] data or computer systems in extracting it").

In the case at bar, in addition to failing altogether to specify the amount of its alleged damages,[7] Synthes has not alleged ***any*** factual basis whatsoever for meeting the "damage or loss" threshold for bringing a civil action under the CFAA. Based on the vagueness of the proposed Second Amended Complaint, the Court and Globus are left to guess the basis of Synthes' damages claim (*e.g.*, whether Synthes is claiming that it suffered costs incurred in responding to the alleged offense, remedial costs in conducting a damage assessment, or some other type of loss) ***and, critically, whether any of the costs that it allegedly incurred were even remotely related to its computers***. *See Nexans Wires,* 319 F. Supp.2d at 475 ("[n]othing in the legislative history of the

---

5 In addition, the court held that the travel expenses of plaintiffs' executives were not "taken to engage in any type of computer investigation or repair" and, therefore, did not constitute "loss" under the Statute. 319 F. Supp.2d at 476-77.

6 Indeed, the "revenue lost" which constitutes "loss" under § 1030(e)(11) is revenue lost "because of interruption of service." 18 U.S.C. § 1030(e)(11).

7 Synthes only generally alleges only that Defendants' conduct "caused Synthes damage and loss" (proposed Second Am. Compl, ¶ 117), and demands judgment for actual, incidental, and consequential damages (*see id.,* Count X), as well as equitable remedies (*id.* ¶ 118).

2001 amendment suggests that the costs incurred in 'responding to an offense' or in 'conducting a damage assessment' can be unrelated to a computer") (citing 146 Cong. Rec. S10913 (daily ed. Oct. 24, 2000) (statement of Sen. Leahy).[8] If, as Globus is left to speculate, Synthes is seeking to meet the jurisdictional threshold of the CFAA by claiming losses that resulted from Defendants "use of confidential and proprietary information to develop the same or similar products to compute unfairly with Synthes" (proposed Am. Compl. ¶ 116), then Synthes' claim must necessarily fail since "loss of business due to defendants' eventual use of the information, rather than a loss of business because of computer impairment, ...[is] too far removed from computer damage to count toward the jurisdictional threshold." *Nexans Wires*, 319 F. Supp.2d at 477.

In sum, Count X of the proposed Second Amended Complaint could not survive a motion to dismiss since Synthes cannot prove an essential element –the jurisdictional threshold – of its CFAA claim. Therefore, Synthes' motion for leave to file Count X of the Second Amended Complaint must be denied as futile.

### C. Synthes' Proposed Amendment Adding Count X Is Futile Because It Has Not Alleged A Necessary Element Of The Statutory Violation

The proposed Second Amended Complaint alleges a violation of the CFAA based on 18 U.S.C. § 1030(a)(2)(C), which provides: "Whoever...intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains... information from any protected computer ***if the conduct involved an interstate or foreign communication...*** " shall be punished as

---

[8] Indeed, Senator Leahy recognized that the "new definition of 'loss' to be added as section 1030(e)(110 will ensure that the full costs to victims of responding to hacking offenses, conducting damage assessments, restoring systems and data to the condition they were in before an attack, as well as lost revenue and costs incurred because of an interruption in service, are all counted." 146 Cong. Rec. S10913 (daily ed. Oct. 24, 2000) (statement of Sen. Leahy).

provided in subsection (c) of this section." *See* Plaintiffs' Memorandum of Law In Support of Motion for Leave to File a Second Amended Complaint, p. 5 (citing 18 U.S.C. § 1030(a)(2)(C) (emphasis added)).

The rules of statutory construction require that the plain language of the statute be given effect.

> The role of the courts in interpreting a statute is to give effect to Congress' intent. Because it is presumed that Congress expresses its intent through the ordinary meaning of its language, ***every exercise of statutory interpretation begins with an examination of the plain language of the statute. Where the statutory language is plain and unambiguous, further inquiry is not required***....In addition when interpreting a statute, courts should endeavor to give meaning to every word which Congress used and therefore should avoid an interpretation which renders an element of the language superfluous.

*Rosenberg v. XM Ventures,* 274 F.3d 137, 141 (3d Cir. 2001) (internal citations omitted). Here, the plain language of the statute requires that, to be actionable, the alleged illegal conduct must have "involved an interstate or foreign communication." Moreover, the legislative history of the CFAA supports this interpretation of the statute. The CFAA defines the term, "protected computer," as a computer "which is used in interstate or foreign commerce or communication...." 18 U.S.C. § 1030(e)(2). This language was added as an amendment to the CFAA in 1996. S. Rep. 104-357, 104th Cong., 2d Sess., 110 Stat. 3491, 3508 (1996). The 1996 amendments also added subsection (a)(2)(C), which explicitly addresses "interstate or foreign commerce." *Id.* "The plain language of the statute, as amended, is clear. Congress intended the CFAA to apply to computers used 'in interstate or foreign commerce or communication.'" *U.S. v. Ivanov*, 175 F. Supp.2d 367, 374 (D. Conn. 2001) (quoting S. Rep. No. 104-357 (1996)); *see also Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp.2d 1121, 1125, 1128-29 (W.D. Wash. 2000) (the

language defining "protected computer" in the CFAA as a computer "used in interstate or foreign commerce" is "unambiguous" and the legislative history of the CFAA comports with the plain meaning of the statute).

Here, Synthes has not alleged any "conduct" on the part of Defendants that "involved an interstate or foreign communication." The only illegal "conduct" that Synthes alleges is that Defendants unlawfully competed with Synthes by using confidential and proprietary information obtained, "at least in part, by using Synthes' computers and accessing these computers without authorization or exceeding their authorized access to this information." Proposed Second Am. Compl. ¶¶ 43-44 and 115. Synthes' computers presumably are located at its principle place of business in Pennsylvania. *Id.* ¶¶ 1-2. Defendant Globus Medical, Inc., which Synthes implies benefitted from the alleged illegal conduct, also maintains its principle place of business in Pennsylvania. *Id.* ¶ 3. In addition, individual Defendants Paul and Kienzle each maintain their address in Pennsylvania. *Id.* ¶¶ 4-5. Synthes further alleges that venue is appropriate in the Eastern District of Pennsylvania because "a substantial part of the events and omissions giving rise to Synthes' claims occurred in this judicial district." *Id.* ¶ 7.

Synthes' failure to plead this requisite element is compelling evidence that Synthes knows that Defendants did not access Synthes' computers from outside of Pennsylvania, but rather, could only have accessed Synthes' computers from Synthes' offices or from their own homes, all of which are in Pennsylvania, and allegedly transmitted that information to defendant Globus, or to themselves, within Pennsylvania. Since all of the possible permutations of transmissions are "intrastate" – that is, Pennsylvania to Pennsylvania – and not a single allegation in the proposed amendment contradicts this inference, Synthes cannot claim that Defendants' alleged conduct

"involved interstate or foreign communications." Therefore, because Synthes' proposed amendment adding Count X for violations of the CFAA cannot meet an essential element of a claim under the CFAA, it is futile and Synthes' motion for leave to file Count X of the Second Amended Complaint should be denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny plaintiffs' motion for leave to file a Second Amended Complaint to the extent that the proposed Second Amended Complaint asserts violations of the CFAA. In the alternative, Defendants respectfully request this Court to permit them to engage in expedited discovery concerning Count X (Violations of the Computer Fraud and Abuse Act) of the proposed Second Amended Complaint prior to deciding whether to grant or deny Synthes' motion.

Respectfully submitted,

October 4, 2005

John P. McShea
Frederick A. Tecce
Anthony M. DiMarino, III
**McSHEA TECCE, P.C.**
Bell Atlantic Tower, 28th Floor
1717 Arch Street
Philadelphia, PA 19103
215-599-0800
215-599-0888 (facsimile)

Attorneys for Defendants David C. Paul and Richard A. Kienzle

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of October 2005, a true and correct copy of the foregoing Defendants' Opposition to Plaintiffs' Motion for Leave to File A Second Amended Complaint was sent *via* hand delivery to the following:

Anthony B. Haller, Esquire
Blank Rome, LLP
One Logan Square
Philadelphia, PA 19103

Anthony J. DiMarino, III