IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SYNTHES (U.S.A.), et al., | : | CIVIL ACTION |
| Plaintiffs | : | |
| | : | |
| v. | : | NO. 04-1235 |
| | : | |
| GLOBUS MEDICAL, INC., et al., | : | |
| Defendants | : | |

M E M O R A N D U M

**STENGEL, J.**                                                                 **March 29 , 2007**

The plaintiffs in this case have moved to strike two of the defendants' affirmative defenses and to dismiss five of the defendants' counterclaims. For the following reasons, I will grant this motion in part and deny it in part.

**I.    BACKGROUND**[1]

The plaintiffs have asked me to bar the defendants from employing their ninth[2] and fifty-first[3] affirmative defenses which relate to the disbanded "Return on Investment

---

[1] I write for the parties, who are familiar with the facts and procedural history of this case, and therefore include only the background information that is relevant to the disposition of this motion.

[2] The defendants' ninth affirmative defense: "Synthes' claims against Defendants and the alleged damages it seeks are barred in whole or in part by Synthes' failure to act reasonably, appropriately, lawfully, and in accordance with its duties and obligations under applicable laws, regulations, and statutes, including but not limited to Synthes' violation of federal statutes aimed at protecting the public and healthcare consumers, or Synthes' discontinuance of its violation of those federal statutes."

[3] The defendants' fifty-first affirmative defense: "Plaintiffs' alleged damages, if any, are unrelated to defendants' conduct, and, to the extent they exist at all, may have resulted from various other factors, including, but not limited to, the fact that for several

(continued...)

Program ('ROI')" of the plaintiffs.  They contend that this is the third time that the defendants have tried to inject this theory into the case notwithstanding my previous rulings against it.  The plaintiffs also seek the dismissal of Counts I through IV[4] of the defendants' counterclaims because they rely upon statements which I previously found to be incapable of a defamatory meaning, and upon the plaintiffs' conduct in this litigation.

## II.   DISCUSSION

Rule 12(f) of the Federal Rules of Civil Procedure provides that the court may order stricken from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  While motions to strike are generally disfavored, they do serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues that would not affect the outcome of the case.  United States v. Union Gas Co., 743 F. Supp. 1144, 1150 (E.D. Pa. 1990); see also McInerney v. Moyer Lumber & Hardware, Inc., 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002) (the purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters); Cameron v. Graphic Mgmt. Assoc., Inc., 817 F. Supp. 19, 22 (E.D. Pa. 1992) (the court may grant a motion to

---

[3](...continued)
years before defendant Globus was formed, Synthes' sales revenues were affected, in part, by the existence or termination of an unlawful program of paying money or unrestricted research grants to physicians to use its products."

[4] Count I alleges defamation; Count II alleges trade libel; Count III alleges tortious interference with prospective contractual relationships; and Count IV alleges unfair competition.

strike a legally insufficient defense so the parties to the suit do not needlessly waste time and money in preparation of trial).

     A motion to strike under Rule 12(f) is the primary procedure for objecting to an insufficient affirmative defense.  Union Gas, 743 F. Supp. at 1150; United States v. Marisol, Inc., 725 F. Supp. 833, 836 (M.D. Pa. 1989).  The court, however, should not grant a motion to strike a defense unless the insufficiency of the defense is clearly apparent.  Cipollone v. Liggett Group, Inc., 789 F.2d 181, 188 (3d Cir. 1986).  An affirmative defense is insufficient if as a matter of law it cannot succeed under any circumstances, In re Sunrise Sec. Litig., 818 F. Supp. 830, 840 (E.D. Pa. 1993), and the moving party is prejudiced by the presence of the allegations in the pleading.  Great West Life Assurance Co. v. Levithan, 834 F. Supp. 858, 864 (E.D. Pa. 1993); see also Miller v. Group Voyagers, Inc., 912 F. Supp. 164, 168 (E.D. Pa. 1996) (motions to strike will generally be denied unless the material bears no possible relation to the matter at issue and may result in prejudice to the moving party); North Penn Transfer, Inc. v. Victaulic Co. of America, 859 F. Supp. 154, 158 (E.D. Pa. 1994) (same).  Finally, a motion to strike should not be granted when the sufficiency of the defense depends upon disputed issues of fact or unclear questions of law.  Marisol, 725 F. Supp. at 836.

     Here, the defendants have included veiled references to the plaintiff's disbanded ROI program and violations of the Medicare Criminal Fraud and Abuse Statute (the

"Anti-Kickback provision")[5] in both their ninth and fifty-first affirmative defenses. Given my earlier decisions regarding this issue, it is the defendants' continued characterization of the ROI program as involving illegal activity which I find most troubling.  For example, the defendants allege that the plaintiffs' damages are not a result of the defendants' actions but of the plaintiffs' own actions when they failed "to act reasonably, appropriately, lawfully, and in accordance with its duties and obligations under applicable laws, regulations, and statutes, including but not limited to ***Synthes' violation of federal statutes aimed at protecting the public and healthcare consumers***, or Synthes' discontinuance of ***its violation of those federal statutes***."  (emphasis added).  The defendants further allege that the plaintiffs' revenues were adversely affected, not by the defendants, but "by the existence or termination of an ***unlawful*** program of paying money or unrestricted research grants to physicians to use its products."  (emphasis added).

In an earlier decision, I struck all paragraphs related to the plaintiffs' ROI program as superfluous and immaterial with respect to the defendants' counterclaims.  See Synthes, et al. v. Globus Medical, et al., 2005 U.S. Dist. LEXIS 19962, *32 (E.D. Pa. September 14, 2005):

> The mere fact the Anti-Kickback provision prohibits Synthes' conduct does not mean that the same conduct cannot provide a basis for civil liability under another state or federal statute.

---

[5] See 42 U.S.C. § 1320a-7b.

4

> The question then is whether the underlying conduct violates Pennsylvania state law.  I find that it does not.  Absent the Anti-Kickback implications, the underlying conduct itself - i.e., sponsoring conferences, providing research grants, and offering promotional incentives - is not inherently unfair or tortious.

Id. at *18.

The defendants properly contend that my earlier decision struck references to the ROI program only with respect to their counterclaims.  They argue that these references should be allowed to support affirmative defenses because they prove that when the ROI program existed, the plaintiffs' sales increased, and when the program was discontinued, the plaintiffs' revenues decreased.

However, the language of these affirmative defenses is in direct contradiction to my earlier decision regarding the defendants' counterclaims.  Allowing the two affirmative defenses to stand as currently written would threaten to confuse the matters that are legitimately in dispute, and inflict substantial prejudice upon the plaintiffs.  The defendants' newly-added fifty-third[6] affirmative defense accomplishes what the ninth and fifty-first affirmative defenses attempt without the characterization of the ROI program as unlawful or violative of federal and/or state law.  Thus, I will strike the defendants' ninth

---

[6] The defendants' fifty-third affirmative defense: "Synthes' alleged losses were directly and proximately caused by factors unrelated to Globus or any of the allegations against Globus, which factors include, but are not limited to, the alleged discontinuation of the Return on Investment program in or about February 2003, market forces, and/or Synthes' own actions and business strategies."

5

and fifty-first affirmative defenses in their entirety.

Next, Synthes again asks that I dismiss four of Globus' counterclaims to the extent that they are grounded on certain statements. The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a Complaint. Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). The court may grant a motion to dismiss only where it appears beyond a reasonable doubt that the non-moving party can prove no set of facts in support of his claim that would entitle him to relief. Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In deciding a motion to dismiss, the court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the non-moving party. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

Three of the four statements in question here were determined to be incapable of defamation in a previous Memorandum of this court. See Synthes, et al. v. Globus, et al., 2005 U.S. Dist. LEXIS 19962 (E.D. Pa. May 14, 2005). In addition, I found that these statements could not serve as the basis for Globus' claims of defamation, trade libel, tortious interference with prospective contractual relationships, and unfair competition. These statements, properly characterized as bluster, are currently found in the twenty-second paragraph of the Amended Answer to the Third Complaint (Document #144), filed on September 5, 2006:

1) [A Synthes representative] in an effort to dissuade Walden from leaving Synthes, told Mr. Walden that Synthes was planning to "drop a bomb" on Globus;

2) As a means of influencing a prominent former Synthes Regional Manager in sales, Daniel Pontecorvo, to reconsider his decision to leave Synthes and form a distributorship for Globus products, a Synthes division President told Mr. Pontecorvo that the judge assigned to this action was "wired" in favor of Synthes, and that Synthes was going to "crush" Globus in litigation costs and expenses;

3) [A Synthes representative] expressed to others that the chairman and majority owner of Synthes, Hanjorg Wyss, had a personal vendetta against David Paul; furthermore, since Mr. Wyss has a estimated net worth of $5 billion, he would spare no expense in attempting to drown Globus in legal fees and drive it out of business.

Nevertheless, I found that Globus had, in fact, pleaded sufficient facts to support these four counterclaims separate and apart from the three non-defamatory statements. That finding has not changed. Thus, I will deny the portion of Synthes' motion which seeks the dismissal of the four counterclaims.

The fourth statement now in question, "Mr. Wyss told others that he would not rest until the doors at Globus were closed," was first added by Globus in its Answer filed on August 4, 2006 (Document #138), and retained in its Amended Answer filed on September 5, 2006 (Document #144). Like the other three, this statement also cannot reasonably be construed as defamatory because it is merely an expression of Synthes' anticipated actions, and does not suggest that the speaker is aware of undisclosed facts that may be defamatory. Thus, this fourth statement likewise cannot serve as the basis for Globus' four counterclaims.

7

Accordingly, because these four statements are irrelevant to any of Globus' counterclaims, I will strike them as superfluous, immaterial, and so unrelated to Globus' claims as to be unworthy of any consideration. Lakits, 258 F. Supp. at 409.

Synthes also asks that I dismiss Globus' abuse of process counterclaim as one that fails to state a claim upon which relief may be granted.[7] The tort of abuse of process is defined as the use of the legal process against another "primarily to accomplish a purpose for which it is not designed." See Restatement (Second) of Torts § 682 (1977); see also Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 304 (3d Cir. 2003). The Supreme Court of Pennsylvania has said that "the gist of an action for abuse of process is the improper use of process *after* it has been issued, that is, a perversion of it." McGee v. Feege, 535 A.2d 1020, 1023 (Pa. 1987) (emphasis added). Generally speaking then, to recover under this theory, a counterclaim-plaintiff must show that the counterclaim-defendant used the legal process in a way that constituted a perversion of that process and caused harm to the counterclaim-plaintiff. This requires that the plaintiff offer some proof of a "definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process." Godshalk v. Borough of Bangor, 2004 U.S. Dist. LEXIS 7962, at *13 (E.D. Pa. May 5, 2004). There is no cause of action for abuse

---

[7] Synthes originally brought this claim as a request to dismiss the four counterclaims to the extent they were based on allegations of an allegedly wrongful use of the litigation process. After the motion was filed, Globus filed its Amended Answer and included an additional counterclaim for abuse of process. In its reply, Synthes properly re-focused its claim as a request to dismiss the newly-added counterclaim.

of process if the counterclaim-defendant, even with bad intentions, merely carries out the process to its authorized conclusion. Id. at *14.  Further, that judicial process was initiated with a bad motive is not enough; an allegation of coercive use of the process is required.  Internet Billions Domain v. Venetian Casino Resort, LLC, 2002 U.S. Dist. LEXIS 11805, at *3 (E.D. Pa. May 31, 2002).

In its abuse of process counterclaim, Globus alleges that Synthes has abused and perverted the process of the instant litigation in that "subsequent to the issuance of the process, Synthes has perversely, coercively, and improperly used the process."  See ¶ 124. It further alleges that the abuse "has been undertaken in bad faith and with unlawful or ulterior purpose," namely, "anti-competitive purposes, efforts to thwart Globus' growth, and wrongful efforts to drive Globus out of business."  See ¶ 126-127.

After carefully reviewing the entire Amended Answer filed on September 5, 2006, I uncovered no allegation which would satisfy the requirements of a claim of abuse of process.  Even the stricken statements discussed above refer to statements made prior to the litigation.  As such, they are not demonstrative of an improper use of process after it has been issued.  Further, as shown above, there can be no cause of action for abuse of process if Synthes, even with bad intentions, merely carries out the process to its authorized conclusion.  Globus points to no post-Complaint litigation conduct which gives rise to a claim of abuse of process.  Moreover, I find no perversion of the process or evidence that Synthes has used this litigation as a tactical weapon to coerce a desired

result.  Gen. Refractories Co., 337 F.3d at 307 (quoting McGee, 535 A.2d at 1026)).  The Third Circuit has held that an abuse of process claim would be valid where a party "intentionally withheld critical documents, ignored court orders, permitted false testimony at depositions and misrepresented facts to opposing counsel and the court.  Id. at 301.  Without some proof of such a definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, Globus' abuse of process counterclaim must fail.  I will dismiss it in its entirety.

Synthes requests that I strike two particular paragraphs of the Amended Answer which allege the improper use of the litigation.  In paragraph 57, Globus alleges:

> Counterclaim Defendants' Third Amended Complaint is objectively baseless, and has been brought for improper purposes.  Counterclaim Defendants have used this litigation to stifle competition from Globus by, among other things, attempting to deter people from dealing with Globus by informing customers, investors, and others that Globus would not survive this litigation.

In paragraph 78, Globus alleges:

> Synthes has wrongfully and intentionally attempted to thwart Globus' rise in the spinal implant device business by engaging in a continuous course of conduct involving disseminating false and malicious information about Globus' personnel and products, employing a scorched earth litigation strategy in connection with an objectively baseless litigation aimed at intimidating and stifling Globus, wrongfully obtaining trade secret and other confidential information from Globus, and unfairly competing in the spinal implant device business by, *inter alia*, making false and disparaging statements concerning Globus and its products.

Because I find that Globus' counterclaims contain no factual allegations that Synthes has used, or even attempted to use, this litigation for any purpose other than to assert its rights and protect its interests, the two above paragraphs in Globus' Amended Answer are irrelevant to any of Globus' remaining counterclaims. Accordingly, I will strike them as superfluous, immaterial, and so unrelated to Globus' claims as to be unworthy of any consideration. Lakits, 258 F. Supp. at 409.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SYNTHES (U.S.A.) and** | : | **CIVIL ACTION** |
| **SYNTHES SPINE COMPANY, L.P.** | : | |
| **Plaintiffs** | : | |
| | : | |
| v. | : | NO. 04-1235 |
| | : | |
| **GLOBUS MEDICAL, INC., et al.** | : | |
| **Defendants** | : | |

## O R D E R

**STENGEL, J.**

    **AND NOW**, this 29th day of March, 2007, upon consideration of the plaintiffs' motion to strike certain of the defendants' affirmative defenses and to dismiss the defendants' counterclaims (Document #143), the defendants' response thereto (Document #145), the plaintiffs' reply (Document #148), and after a hearing on the motion with all parties present, it is hereby ORDERED that the motion is GRANTED in part and DENIED in part, in accordance with the Memorandum.

BY THE COURT:

/s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.