IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SYNTHES (USA), et al., | : | CIVIL ACTION |
| Plaintiffs | : | |
| | : | |
| v. | : | NO. 04-1235 |
| | : | |
| GLOBUS MEDICAL, INC., et al., | : | |
| Defendants | : | |

M E M O R A N D U M

STENGEL, J.                                          July 12, 2007

The parties in this case have both moved for partial summary judgment with
respect to various claims and counterclaims.  For the reasons that follow, I will grant the
plaintiffs' motion and deny the defendants' motion.

I.      BACKGROUND[1]

The plaintiffs manufacture, produce, and market medical implants and devices,
including plates, screws and rods for use in orthopedic surgery.  In 2003, Defendants
David Paul and Richard Kienzle resigned their management positions at Synthes and
created Globus Medical, Inc., which has become one of Synthes' competitors.  Synthes
contends that Globus improperly used resources and information that Defendants Paul
and Kienzle obtained during the course of their employment with Synthes, unlawfully
recruited Synthes' employees, and improperly misappropriated and passed off Synthes'

---

[1] I write for the parties, who are familiar with the facts and procedural history of
this case, and therefore include only the background information that is relevant to the
disposition of these motions.

products as their own.

In its Third Amended Complaint, Synthes alleges false and misleading advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a); misappropriation of trade secrets; civil conspiracy; two counts of breach of contract; tortious interference with contract; common law unfair competition; breach of fiduciary duty; aiding and abetting breach of fiduciary duty; and violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

In its Amended Answer to Synthes' Third Amended Complaint, Globus brought several counterclaims against Synthes, including (1) defamation, (2) trade libel, (3) tortious interference with prospective contractual relationships, (4) Pennsylvania unfair competition, and (5) several counts for declaratory judgment.[2]

## II.    LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party initially bears the burden of showing the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met simply by demonstrating "to the district court that there is an absence of evidence to support the non-moving party's case."  Id. at 325.  A fact is "material" only when it could affect the result of the lawsuit under the

---

[2] On March 29, 2007, I dismissed Globus' counterclaim for abuse of process.

applicable law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a

genuine issue of material fact exists when "the evidence is such that a reasonable jury

could return a verdict for the non[-]moving party." Id.  The moving party must establish

that there is no triable issue of fact as to all of the elements of any issue on which the

moving party bears the burden of proof at trial.  See In re Bessman, 327 F.3d 229, 237-38

(3d Cir. 2003) (citations omitted).

After the moving party has met its initial burden, "the adverse party's response, by

affidavits or otherwise as provided in this rule, must set forth specific facts showing that

there is a genuine issue for trial."  FED. R. CIV. P. 56(e); see also Williams v. West

Chester, 891 F.2d 458, 464 (3d Cir. 1989).  A motion for summary judgment looks

beyond the pleadings and factual specificity is required of the party opposing the motion.

Celotex, 477 U.S. at 322-23.  The non-moving party may not merely restate allegations

made in its pleadings or rely upon "self-serving conclusions, unsupported by specific

facts in the record." Id.  Rather, the non-moving party must support each essential

element of its claim with specific evidence from the record.  See id.

A district court analyzing a motion for summary judgment "must view the facts in

the light most favorable to the non-moving party" and make every reasonable inference in

favor of that party.  Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir.

2005) (citations omitted).  The standards governing cross-motions for summary judgment

are the same, although the court must construe the motions independently, viewing the

evidence presented by each moving party in the light most favorable to the nonmovant.

Grove v. City of York, 342 F. Supp.2d 291, 299 (M.D. Pa. 2004).  Summary judgment is

therefore appropriate when the court determines that there is no genuine issue of material

fact after viewing all reasonable inferences in favor of the non-moving party.  See

Celotex, 477 U.S. at 322.

III.    DISCUSSION

   A. DEFAMATION

      1. Globus' Counterclaim I

        In its Amended Answer, Globus grounded the four counterclaims at issue here on a

series of statements that it attributed to Synthes and its representatives.  In its first

counterclaim, Globus alleges that Synthes made false and defamatory statements

regarding the nature, characteristics and qualities of Globus' products, ability to conduct

its business, financial stability, and business reputation that have harmed the reputation of

Globus by lowering Globus in the estimation of the community, including prospective

purchasers and users of Globus products.

        To establish a *prima facie* case of defamation, Globus must prove that:  (1) the

communication was defamatory; (2) Synthes published the communication; (3) the

communication applied to Globus; (4) the recipient understood the defamatory meaning;

(5) the recipient understood the communication as intended to be applied to Globus; (6)

4

Globus incurred special harm as a result from publication of the communication; and (7) abuse of a conditional privilege.  42 PA. CONS. STA. ANN. § 8343(a).

Pennsylvania law requires a showing of special damages to prove defamation.  Id. Typically considered as pecuniary loss, special damages are actual and concrete damages capable of being estimated in money, established by specific instances such as actual loss due to withdrawal of trade of particular customers, or actual loss due to refusal of credit by specific persons, all expressed in figures.  Beverley Enterprises, Inc. v. Trump, 182 F.3d 183, 188 (3d Cir. 1999).

Synthes seeks summary judgment in its favor with respect to this counterclaim, insisting that the only evidence to support the element of special damages is contained in three emails created for the purpose of this litigation.  These emails were disclosed to Synthes for the first time by John W. Wills, Globus' expert on damages, in his report dated February 15, 2007.  This report based Globus' projection of damages solely on three emails sent by Globus' sales representatives in January and February 2007 and produced to Synthes for the first time on March 2, 2007.

On January 25, 2007, David Demski, Globus' Chief Financial Officer, requested information from Globus' entire sales force to help support Globus' counterclaims.  See Exhibit E of Synthes' Motion.  This request solicited any information concerning alleged defamatory statements made by Synthes' employees and any alleged resulting lost business.  Three emails came in response.  Relying on these three emails, Mr. Wills

5

quantified the harm to Globus that it suffered in the marketplace as a result of Synthes'
alleged conduct, and concluded that Globus lost $1.94 million in profits.

_____The first email was sent by Gregg Harris to Mr. Demski on January 27, 2007.  See
Exhibit B of Synthes' Motion.  Mr. Harris wrote that "several of the TBI surgeons told
[him] that Synthes had made them aware of 'bad blood' between [Globus] and Synthes."
He further wrote, "Yesterday I had a discussion with one of their fellows.  He told me that
the Synthes rep, Pat Burgess, has been telling the fellows (total of five each year) and
eight of the TBI surgeons the following:" 1) that "Globus has stolen patents and
intellectual property from Synthes;" and 2) that "Globus is involved in litigation with
Synthes that will soon shut us down."

Mr. Harris also mentioned a conversation with a surgeon named Dr. Guyer who
told him "in '05" about the rumors he was hearing from Synthes regarding "patent
infringements, etc."  Finally, Mr. Harris estimated that TBI uses approximately $8-10
million in spinal implants per year, and that Globus had easily lost out on $1 million in
sales per year since 2005.

The second email was sent by Ross Tate on February 9, 2007.  See Exhibit C of
Synthes' Motion.  Mr. Tate wrote that in January 2006, he had met with both a local
Synthes representative named Troy Feldsman and Mr. Feldsman's regional manager.
(From the context of the email, Mr. Tate was not then a Globus employee.)  They told Mr.
Tate that Globus would likely contact him to work for them, but that Globus was a "bad

6

company, that David Paul had stolen his ideas from Synthes and that Synthes was going

to sue the pants off of [Globus] and put them out of business."

Mr. Tate also wrote that he had heard from a Danek representative that Troy

Feldsman was telling people at a NeuroScience Symposium in Montana that Globus "was

going down due to a lawsuit by Synthes."  Finally, Mr. Tate said that he feels strongly

that Mr. Feldsman's words had made their way to Dr. Richard Day, a neurosurgeon.  In

the previous five years, Mr. Tate had done $500,000 worth of business with Dr. Day

annually.  Nevertheless, it had become increasingly difficult for Mr. Tate to meet with Dr.

Day.

The third email was sent by Jason McCabe on February 13, 2007.  See Exhibit D.

Mr. McCabe wrote that on that same day, he had a telephone discussion with Eric Stiener,

a Synthes representative, to discuss arranging a social meeting.  Mr. McCabe told Mr.

Stiener that he was currently with a surgeon who uses Globus' products.  Mr. Stiener

responded that "that's what happens when you buy surgeons."  Mr. McCabe also

indicated that Globus had not been able to get any cases with four of the surgeons whom

Mr. Stiener services.  Mr. McCabe estimated that with his past relationship with these

surgeons, Globus should have received at least $10,000 to $30,000 in sales per month

since the summer of 2006.  Instead, Globus made no sales from these surgeons.

Synthes argues that the first two emails are inadmissible because they contain out-

of-court statements offered to prove that Synthes representatives published an allegedly

7

defamatory statement; and as inadmissible hearsay, they cannot support Globus' claim of damages.  Regarding the third email, Synthes argues first that it is inadmissible because it contains an out-of-court statement as proof that such a statement was made by a Synthes representative.  Second, Synthes contends that the statement was made in February 2007, and could not have adversely effected Globus' sales, and caused Globus to suffer damages dating back to 2006.  Third, this email shows no evidence of publication to a third party, an essential element of a claim for defamation or trade libel in Pennsylvania.[3] See 42 Pa.C.S. § 8342(a).

It is well-established that the hearsay rule forbids evidence of out-of-court statements offered to prove the truth of the matter asserted.  See Rule 801(c) of the Federal Rules of Evidence.  If the statement is not an assertion or is not offered to prove the facts asserted, it is not hearsay.  In Pennsylvania, an out-of-court statement is not hearsay when it is introduced for the purpose of establishing that the statement was made and not to establish its truth; to explain a course of conduct; or to reflect the declarant's

---

[3]  While I recognize that the element of publication may be satisfied where a reasonable jury could infer defamation, see Cushman v. Trans Union Corp., 115 F.3d 220, 230 (3d Cir. 1997) (a reasonable jury could conclude that the plaintiff had satisfied the publication element of her defamation cause of action where an employee of the defendant admitted publication of defamatory information to two third parties, and the plaintiff testified that a bill collector at the receiving end of the usual chain of communication informed her of the defamatory information), that is not the case here.  The third email indicates that during a social telephone call, a Synthes employee made the remark to the author of the email itself and no one else.  A connection between this glib remark between friends and Globus' lack of success in that geographic area is far too tenuous to infer defamation.  There is no evidence here of publication to a third party.

8

state of mind.  <u>Spotts v. Reidell</u>, 497 A.2d 630, 633 (Pa. Super. 1985).

In the first two emails, Globus is attempting to introduce the testimony of individuals who did not personally witness the alleged defamatory statements but were later told by others that the statements was made.  The statements in these emails are being offered to prove the truth that other statements were made by a Synthes representative to a third party.  The content of the other statements and its truth are secondary here.  The third email also contains an out-of-court statement which is being offered as evidence that an alleged defamatory statement was made by a Synthes representative.  Such testimony is hearsay.

Generally, hearsay is not admissible in court.  FED. R. EVID. 802.  In order to survive summary judgment, a non-moving party must point to <u>admissible evidence</u> which establishes the existence of a genuine issue of material fact.  FED.R.CIV.P. 56(e) (emphasis added); <u>see also</u> <u>Shelton v. Univ. of Medicine & Dentistry of N.J.</u>, 223 F.3d 220, 223 n.2 (3d Cir. 2000) (hearsay statements may be considered at summary judgment only if they are capable of admission at trial).  There are many exceptions to the hearsay rule provided by the Federal Rules of Evidence.  The statements in these emails, however, satisfy none of these exceptions.  Thus, I find that the hearsay rule bars the admission of these emails.

The Wills Report based Globus' damages solely on these three inadmissible emails.  Relying on the estimations provided in these emails, Mr. Wills quantified the

harm to Globus that it suffered in the marketplace as a result of Synthes' alleged conduct. Without these email statements, there is no factual basis for Mr. Wills' opinion.  Globus has failed to provide any other evidence of special damages, a necessary element for a claim of defamation.  Thus, this counterclaim must fail as a matter of law.  Accordingly, I will grant summary judgment in Synthes' favor and against Globus with respect to Counterclaim I.

### B.  TRADE LIBEL

#### 1.  Globus' Counterclaim II

Globus asserts that all of the statements that support its claim for defamation also subject Synthes to liability for trade libel.  The primary difference between defamation and trade libel is the nature of the interest each cause of action is designed to protect.  See Zerpol Corp., 561 F. Supp. at 408 (E.D. Pa. 1983).  Whereas the action for defamation is intended to secure one's interest in character and reputation, an action for trade libel is calculated to protect against derogatory statements that affect the marketability of a party's goods or services.  Id. (citing Restatement (Second) of Torts § 623A, cmt. g.)

The publication of a disparaging statement concerning the product of another is actionable if:  (1) the statement is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity.  Pro Golf

Mfg., Inc. v. Tribune Review Newspaper Co., 570 Pa. 242, 246 (2002) (citing

Restatement (Second) of Torts § 623A (1977)); Zerpol Corp., 561 F. Supp. at 409 (citing

Restatement (Second) of Torts § 623A, cmt. g (1977)).

In its motion for partial summary judgment, Synthes again argues that Globus is

unable to satisfy the elements of this tort because the statements on which Globus based

its damages claim are inadmissible hearsay, or, in the case of the third email's statements,

were not published to a third party.  Because Globus has failed to provide any admissible

evidence of its damages, I am constrained to find that this counterclaim must also fail as a

matter of law.  Accordingly, I will grant summary judgment in Synthes' favor and against

Globus with respect to Counterclaim II.

## C.  VIOLATION OF THE LANHAM ACT

### 1.  Synthes' Count I

Globus moves for summary judgment on Synthes' Lanham Act claim because it

contends that Synthes cannot prove the essential element of harm or causation.

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), creates a cause of action

for any false description or representation of a product.[4]  This proscription extends to

---

[4] Section 43(a) provides:  Any person who, on or in connection with any goods or
services, or any container for goods, uses in commerce any word, term, name, symbol, or device,
or any combination thereof, or any false designation of origin, false or misleading description of
fact, or false or misleading representation of fact, which –
    (1)        is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,
(continued...)

misleading descriptions or representations.  United States Healthcare v. Blue Cross of Greater Phila., 898 F.2d 914, 921 (3d Cir. 1990).  A violation of the Lanham Act requires a plaintiff to prove five elements:  1) that the defendant has made false or misleading statements as to his own or another's product;  2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience;  3) that the deception is material in that it is likely to influence purchasing decisions;  4) that the advertised goods traveled in interstate commerce;  and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.  Warner-Lambert Company v. BreathAsure, Inc., 204 F.3d 87, 91-92 (3d Cir. 2000) (quoting Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Rhone-Poulenc Rorer Pharmaceuticals, Inc., 19 F.3d 125, 129 (3d Cir. 1994).

At a hearing in November 2006, Synthes' counsel stated on the record that Synthes was not seeking damages in the form of its lost profits, and thus was not required to produce in discovery any financial information including evidence of lost sales, lost profits, or other financial loss.  Globus argues that this decision was fatal to Synthes' case because it left the record void of evidence to support a determination of actual harm or

---

[4](...continued)
      connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(2)      in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

injury to Synthes, an essential element of the claims in Counts I through VIII.

Section 35(a) of the Lanham Act, 15 U.S.C. § 1117, provides that when a violation under section 43(a) shall have been established in any civil action arising under this Act, the plaintiff shall be entitled to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.  I agree with Synthes that the statute's plain use of the word "any" in subsection (2) suggests that it is not a requirement for a plaintiff to assess damages in order to recover under the Act.  Should a plaintiff not sustain damages as a result of a violation, it would still be entitled to recover defendant's profits and the costs of the action.

Further, a plaintiff seeking damages under the Lanham Act must establish customer reliance but need not quantify loss of sales as that goes to the measure of damages, not the cause of action.  Warner-Lambert Co. V. BreathAsure, Inc., 204 F.3d at 92; see also U.S. Healthcare, et al. v. Blue Cross, et al., 898 F.2d at 922 (to recover damages under the Act, a plaintiff must show that the misrepresentation actually deceives a portion of the buying public, but does not place upon the plaintiff a burden of proving detailed individualization of loss of sales; such proof goes to the quantum of damages and not to the very right to recover).

Actual lost profits need not be established in order to recover under the Lanham Act.  I will deny Globus' motion for summary judgment as to Count I.

### D.  MISAPPROPRIATION OF TRADE SECRETS

#### 1.  Synthes' Count II

In Count II, a claim for misappropriation of trade secrets, Synthes alleges that Globus benefitted from the use of Synthes' trade secrets and confidential information in competition with Synthes.  These trade secrets and information include product concepts and designs, engineering drawings, manufacturing methods, and regulatory strategies. Globus argues that this claim must also be dismissed because Synthes cannot prove the essential element of harm.

The elements of a misappropriation of trade secrets claim in Pennsylvania are: 1) the existence of a trade secret; 2) communication of the trade secret pursuant to a confidential relationship; 3) use of the trade secret, in violation of that confidence; and 4) harm to the plaintiff.  Moore v. Kulicke & Soffa Induc., Inc., 318 F.3d 561, 566 (3d Cir. 2003).  These elements are derived from the Restatement (First) of Torts § 757 which states, "one who discloses or uses another's trade secret, without a privilege to do so, is liable to the other if (a) he discovers the secret by improper means, or (b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him.  Id.

In its motion for partial summary judgment, Globus argues: 1) that because of Synthes' refusal to provide financial information, the final element of this claim cannot be satisfied, and 2) that Synthes' failure to establish that it suffered any actual injury, harm,

loss, or damage as a result of the alleged misappropriation of its trade secrets, precludes it from proving an essential element of this claim.  I do not agree.

There is no requirement that the harm to the plaintiff be of a financial nature to establish the final element of this tort.  In fact, Pennsylvania law allows a plaintiff alleging misappropriation of trade secrets to measure its damages in two different ways, either by the measurable losses the plaintiff suffered from the misappropriation or by the profits or other benefits the defendant gained.  See Fishkin v. Susquehanna Partners, G.P., 2007 U.S. Dist. LEXIS 19621, *3-4 (E.D. Pa. 2007) (citing Rohm and Haas Co. v. Adco Chem. Co., 689 F.2d 424, 433-34 (3d Cir. 1982) (Pennsylvania law permits the recovery of defendants' profits or plaintiff's damages resulting from defendants' wrongs)).

Thus, Synthes is not required to prove lost profits in order to satisfy the damages element of this claim.  Synthes' failure to produce financial information in discovery does not create a flaw fatal to its trade secret claims.  I will deny Globus' motion for summary judgment with respect to Count II.

## E.  BREACH OF CONTRACT

### 1.  Synthes' Counts IV and V

Count IV of the Third Amended Complaint alleges that Defendant Paul breached his agreement with Synthes that he would not use Synthes' secret and confidential information when he left Synthes.  Count V alleges that Defendant Kienzle breached

similar non-disclosure agreements designed to protect Synthes' confidential information, which also included provisions for a one year non-compete period.

A breach of contract claim in Pennsylvania requires proof of three elements:  1) the existence of a contract, including its essential terms; 2) a breach of a duty imposed by the contract; and 3) resultant damages.  Ware v. Rodale Press, Inc., 322 F.3d 218, 225-226 (3d Cir. 2003) (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).  Again, Globus argues that Synthes' refusal to provide financial information to establish that it suffered any actual injury, harm, loss, or damage, precludes it from proving the third element of this claim, i.e., damages.

A breach of a restrictive covenant such as a non-disclosure agreement or a non-compete contract inflicts irreparable harm on an employer, particularly upon the employer's relationships with its customers.  John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc., 369 A.2d 1164, 1167 (Pa. 1977); Vector Security, Inc. v. Stewart, 88 F. Supp.2d 395, 399 (E.D. Pa. 2000).  Pennsylvania courts have recognized that damages arising out of a breach of a covenant not to compete are difficult to compute with precision.  Aiken Indus., Inc. v. Estate of Wilson, 383 A.2d 808, 811-12 (Pa. 1978) (covenant protects against activity the necessary effect of which will be to foster, if not instigate, competition).  Harms flowing from the breach can be in forms other than lost profits and Pennsylvania courts employ remedies other than lost profits according to the circumstances of each case.  By the very nature of covenants not to compete, damages in

the nature of lost profits are difficult to establish with mathematical certainty and only reasonable certainty will be required.  Ebright v. Shutter, 386 A.2d 66, 68-69 (Pa. Super. 1978) (citing Ross v. Houck, 184 Pa.Super. 448, 136 A.2d 160 (1957)).  Often the reasonable certainty required may be fulfilled by looking to a restitutionary measure of damages.  Id.  In fact, the court in Ebright explicitly refused to find that the only measure of damages in breach of contract cases was lost profits.  Id.

Accordingly, Synthes was not required to provide financial information such as lost profits in order to satisfy the damages element of these claims.  I will deny Globus' motion for summary judgment with respect to Counts IV and V.

### F.  TORTIOUS INTERFERENCE WITH CONTRACT

#### 1.  Synthes' Count VI

Count VI of the Third Amended Complaint is based on allegations that Globus induced Synthes' former employees to compete with Synthes and to disclose Synthes' confidential information.  Globus argues that this claim must be dismissed because Synthes cannot prove the essential element of harm or causation.

To maintain an action for intentional interference with contractual relations in Pennsylvania, there are four elements:  1) the existence of a contractual or prospective contractual relation between the complainant and a third party; 2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a

prospective relation from occurring; 3) the absence of a privilege or justification on the part of the defendant; and 4) the occasioning of actual legal damage as a result of the defendant's conduct.  Ride The Ducks of Phila., LLC v. Duck Boat Tours, Inc., 138 Fed. Appx. 431 (3d Cir. 2005) (citing Pelagatti v. Cohen, 536 A.2d 1337, 1343 (Pa. Super. 1987)).

In Ecolaire, Inc., v. Crissman, et al., 542 F. Supp. 196 (E.D. Pa. 1982), the district court specifically found that the plaintiff was entitled to disgorgement of the defendants' wrongful profits for their use of plaintiff's confidential and proprietary information acquired through tortious interference with a non-disclosure agreement.  The court said that disgorgement of defendants' profits was appropriate because "the evidence shows a conscious wrongdoer plus at least a hope for reasonably accurate calculation and allocation of profit."  See also Jacobson & Co., Inc. v. International Environment Corp., 235 A.2d 612 (Pa. 1967) (affirming award of disgorgement of defendant's profits for tortious interference for inducing plaintiff's former employee to breach non-competition agreement).

Accordingly, Synthes was not required to provide financial information such as lost profits in order to satisfy the element of actual legal damage for the claim of intentional interference with contractual relations.  I will deny Globus' motion for summary judgment with respect to Count VI.

### 2. Globus' Counterclaim III

In this counterclaim, Globus alleges that Synthes intended to harm Globus by unfairly competing using improper marketing techniques and maliciously interfering with Globus' prospective contractual relationships by intending to prevent those relationships from occurring.  Globus further alleges that Synthes attempted to, and has, tortiously interfered with Globus' reasonable expectation of economic advantage and prospective contractual relationships with anticipated purchasers and users of products manufactured and/or distributed by Globus.

In its motion for partial summary judgment, Synthes again argues that Globus is unable to satisfy the elements of this tort because the statements on which Globus based its damages claim are inadmissible hearsay, or, in the case of the third email's statements, were not published to a third party.  As discussed above, because Globus has failed to provide any admissible evidence of actual legal damages, I find that this counterclaim must also fail as a matter of law.  Accordingly, I will grant summary judgment in Synthes' favor and against Globus with respect to Counterclaim III.

### G.  PENNSYLVANIA UNFAIR COMPETITION

#### 1.  Synthes' Count VII

Count VII of the Third Amended Complaint is based on Synthes' allegations of Globus' efforts to lure away Synthes employees using unlawful means and its stealing of

Synthes' proprietary trade secrets and confidential information.  In its motion for partial

summary judgment, Globus links this Count with Count I of the Third Amended

Complaint in arguing that Synthes' decision not to produce any of its sales data, including

evidence of lost profits causally related to Globus' alleged wrongful actions, prevents

Synthes from establishing the element of injury or harm.

Pennsylvania recognizes a common law claim of unfair competition under the

Restatement (Third) of Unfair Competition.  Air Products and Chemicals, Inc. V. Inter-

Chemical, LTD, et al., 2003 U.S. Dist. LEXIS 23985, *34 (E.D. Pa. 2003) (quoting Fresh

Made, Inc. v. Life Way Foods, 2002 U.S. Dist. LEXIS 15098, *9 (E.D. Pa. 2002)).  The

Restatement provides, in relevant part:

> One who causes harm to the commercial relations of another
> by engaging in a business or trade is not subject to liability to
> the other for such harm unless . . . the harm results from . . .
> acts or practices of the actor determined to be actionable as an
> unfair method of competition, taking into account the nature
> of the conduct and its likely effect on both the person, seeking
> relief and the public.

Restatement (Third) Unfair Competition § 1(a).  Comment (g) to the Restatement

explains that "a competitor who diverts business from another . . . through the wrongful

use of confidential information, for example, may in some circumstances be subject to

liability for unfair competition even if the conduct is not specifically actionable under the

rules relating to deceptive marketing or appropriation of trade secrets."  Air Products and

Chemicals, Inc. V. Inter-Chemical, LTD, et al., 2003 U.S. Dist. LEXIS 23985, at *35.

20

A claim of unfair competition under Pennsylvania law requires proof that the defendant has "passed off" the goods of one manufacturer or vendor as those of another, thus creating confusion between his own goods, and those of the rival.  Scanvec Amiable, Ltd. v. Chang, 80 Fed. Appx. 171, 180 (3d Cir. 2003) (citing Penn. State Univ. v. Univ. Orthopedics, Ltd., 706 A.2d 863, 870-71 (Pa. Super. Ct. 1998) (The gist of the action lies in the deception practiced in "passing off" the goods of one for that of another)); see also Louis Vuitton Malletier & Oakley, Inc. v. Veit, 211 F. Supp. 2d 567, 582 (E.D. Pa. 2002) (noting that common law cause of action for unfair competition in Pennsylvania mirrors the requirements of section 43(a) of the Lanham Act).  Pennsylvania courts have recognized a cause of action for the common law tort of unfair competition where there is evidence of, among other things, trademark, trade name, and patent rights infringement, misrepresentation, tortious interference with contract, improper inducement of another's employees, and unlawful use of confidential information.  See ID Security Sys. Canada, Inc. v. Checkpoint Sys., Inc., 249 F. Supp.2d 622, 688 (E.D. Pa. 2003) (tortious interference with contract); Albee Homes, Inc. v. Caddie Homes, Inc., 207 A.2d 771 (Pa. 1965) (inducement of another's employees); Morgan's Home Equip. Corp. v. Martucci, 390 Pa. 618, 635 (Pa. 1957) (trading on another's reputation); Goebel Brewing Co. v. Esslingers, Inc., 95 A.2d 523 (Pa. 1953) (trademark and trade name infringement).

Because Synthes' unfair competition claim is based on Globus' theft and use of Synthes' proprietary information, to the extent any "harm" or "detriment" element exists

for this claim, Globus' very use of the information in competition constitutes sufficient harm.  Synthes was not required to provide evidence of financial harm in order to satisfy its claim of common law unfair competition.  Accordingly, I will deny Globus' motion for summary judgment with respect to Count VII.

### 2.  Globus' Counterclaim IV

In its Amended Answer, Globus alleges that Synthes has wrongfully and intentionally attempted to thwart Globus' rise in the spinal implant device business by engaging in a continuous course of conduct involving disseminating false and malicious information about Globus' personnel and products (including, but not limited to, bad faith allegations that Globus' products infringe the claims of Synthes' patents).  It further alleges that Synthes has caused harm to Globus by unfairly competing with Globus through its acts of tortious interference with prospective contractual relationships, and through its wrongful trade libelous conduct and defamatory conduct.

To the extent that Globus bases this counterclaim for unfair competition on allegations of tortious interference with prospective contractual relationships, trade libel, and defamation, the counterclaim must fail.  I have already found that the evidence does not support these latter torts.  Further, as Globus notes in its own motion for partial summary judgment, the elements of claims for Pennsylvania common law unfair competition and claims for violations of the Lanham Act are identical except that the Lanham Act requires an effect on interstate commerce.  <u>AT&T v. Winback & Conserve</u>

Program, Inc., 42 F.3d 1421, 1433 (3d Cir. 1994).  In fact, in that same motion, Globus

argued that Synthes' Pennsylvania Unfair Competition claim must be dismissed because

Synthes could not prove the essential element of harm or causation.  Synthes makes a

very similar argument in its motion for partial summary judgment.  It argues that Globus

is unable to satisfy the elements of this tort because the statements on which Globus based

its damages claim are not admissible.

Globus has failed to provide any other admissible evidence of actual legal

damages, I find that this counterclaim must also fail as a matter of law.  Accordingly, I

will grant summary judgment in Synthes' favor and against Globus with respect to

Counterclaim IV.

### H.  BREACH OF FIDUCIARY DUTY

#### 1.  Synthes' Count VIII

In Count VIII, Synthes claims that Defendants Paul and Kienzle breached their

fiduciary duties to Synthes by misappropriating confidential and proprietary information

so that they, and Globus, could benefit from its use.  Globus claims that this claim must

be dismissed because Synthes cannot prove the essential element of harm or causation.  I

do not agree.

To prove a fiduciary duty claim in Pennsylvania, a plaintiff must establish three

elements:  1) that the defendant negligently or intentionally failed to act in good faith and

solely for the benefit of the plaintiff in all matters for which he was employed; 2) that the plaintiff suffered injury; and 3) that the agent's failure to act solely for the plaintiff's benefit was a real factor in bringing about the plaintiff's injuries. Dinger v. Allfirst Fin., Inc., 82 Fed. Appx. 261, 265 (3d Cir. 2003) (quoting McDermott v. Party City Corp., 11 F.Supp. 2d 612, 626 n.18 (E.D. Pa. 1998)).

Under Pennsylvania law, breaches of fiduciary duty are remediable by returning to the complainant the benefit taken by the offending party. Rothman v. Specialty Care Network, Inc., 2000 U.S. Dist. LEXIS 15433, *8-9 (E.D. Pa. 2000) (citing Sack v. Feinman, 413 A.2d 1059, 1065-66 (Pa. 1980)). Parties alleging breaches of fiduciary duty need not show the existence of damages other than the offending party's receipt of a benefit that should have inured to the complainant. Id. Similarly, claims seeking restitution of an unjust enrichment need only allege that the offending party has received a benefit at the complainant's expense and that retaining the benefit would be inequitable. Id. at *9 (citing Mitchell v. Moore, 729 A.2d 1200, 1203-1204 (Pa. Super 1999)).

Synthes was not required to provide financial information such as lost profits in order to satisfy the element that it suffered injury. Accordingly, I will deny Globus' motion for summary judgment with respect to Count VIII.

## I.  AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

### 1.  Synthes' Count IX

Count IX, a derivative claim, alleges that the defendants aided and abetted breach of fiduciary duty.  Synthes claims that Defendants Globus, Paul, and Kienzle, knowingly and substantially assisted other Synthes employees in breaching their fiduciary duties to Synthes by misappropriating and disclosing confidential and proprietary information.  To prevail here, a plaintiff must prove three elements:  1) a breach of a fiduciary duty owed to another; 2) knowledge of the breach by the aider and abettor; and 3) substantial assistance or encouragement by the aider and abettor in effecting that breach.  Koken v. Steinberg, 825 A.2d 723, 732 (Pa. Commw. 2003).

The defendants argue that because a breach of a fiduciary duty is necessary to establish the claim of aiding and abetting, and because Synthes' cannot prevail on Count VIII, Count IX must be dismissed.  In Section H above, I did not agree with Globus' contention that Synthes' claim for breach of a fiduciary duty must be dismissed.  Thus, the elements of the aiding and abetting claim may be satisfied, and I will permit Count IX to proceed to the jury.  I will deny Globus' motion for summary judgment as to Count IX.

### J.  CIVIL CONSPIRACY

### 1.  Synthes' Count III

Synthes' Count III is based upon Defendants Paul and Kienzle combining with at

least each other to compete unfairly with Synthes and to deprive Synthes of the benefit of its own property.

In Pennsylvania, the elements of a claim of civil conspiracy are: 1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; 2) an overt act done in pursuance of the common purpose; and 3) actual legal damage.  General Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003).

Globus again argues that because the record has no evidence of identifiable injury, harm, loss, or damage to Synthes that is causally related to any alleged civil conspiracy, Synthes cannot establish that it suffered any actual legal damage, a required element.  I do not agree.

The record contains evidence sufficient for a jury to determine whether all of the elements of civil conspiracy have been satisfied, including actual legal damage.  For example, in the case of trade secrets, this actual legal damage would be measured by the amount of profits the defendants made through the use of Synthes' trade secrets.  Thus, I will deny Globus' motion for summary judgment as to Count III.

An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SYNTHES (U.S.A.), et al., | : | CIVIL ACTION |
| Plaintiffs | : | |
| | : | |
| v. | : | NO. 04-1235 |
| | : | |
| GLOBUS MEDICAL, INC., et al., | : | |
| Defendants | : | |

## O R D E R

**STENGEL, J.**

    **AND NOW**, this  12th  day of July, 2007, upon consideration of the parties'
motions for partial summary judgment, the responses thereto, and after a hearing on the
motions with all parties present, it is hereby ORDERED that the plaintiffs' motion for
partial summary judgment (Document #211) is GRANTED, and the defendants' motion
for partial summary judgment (Document #208) is DENIED.

                                    BY THE COURT:

                                      /s/ Lawrence F. Stengel
                                      LAWRENCE F. STENGEL, J.