# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

|  |  |  |
|---|---|---|
| SYNTHES (U.S.A.) and | : | |
| SYNTHES SPINE COMPANY, L.P,. | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 04-cv-01235 |
| | : | |
| GLOBUS MEDICAL, INC., | : | |
| DAVID C. PAUL, | : | |
| RICHARD A. KIENZLE, and | : | |
| LAWRENCE BINDER | : | |
| Defendants. | : | |

---

## PLAINTIFFS SYNTHES (U.S.A.) AND SYNTHES SPINE COMPANY, L.P.'S PROPOSED JURY INSTRUCTIONS

Plaintiffs Synthes (U.S.A.) and Synthes Spine Company, L.P. hereby submits the following Proposed Jury Instructions and Proposed Verdict Forms and respectfully reserve the right to amend or supplement them at or before the close of evidence, as the circumstances may warrant.

Respectfully submitted,

/s/ Diane Siegel Danoff
DECHERT LLP
Robert C. Heim
Diane Siegel Danoff
Kevin M. Flannery
Cira Centre
2929 Arch Street
Philadelphia, PA  19104-2808
(215) 994-4000

/s/ Anthony Haller
BLANK ROME LLP
Anthony B. Haller
Michael P. Broadhurst
Leigh Ann Fierro
One Logan Square
Philadelphia, PA 19103
(215) 569-5000

Attorneys for Plaintiffs, Synthes (U.S.A.) and Synthes Spine Company, L.P.

Dated:  July 16, 2007

i

# Table of Contents

1.  Notice or Knowledge:
    Duty of inquiry ................................................................................................ 1

2.  Vicarious liability:
    How a corporation acts, generally ...................................................................... 2

3.  Breach of contract:
    Elements of contract formation, generally .......................................................... 3

4.  Breach of contract:
    Contracts not to disclose, or confidentiality agreements, generally ...................... 7

5.  Breach of contract:
    Breach of restrictive covenants, generally .......................................................... 9

6.  Breach of contract:
    Elements of a cause of action for breach of restrictive covenants ..................... 10

7.  Tortious interference with contract:
    Generally ........................................................................................................ 11

8.  Tortious interference with contract:
    Lack of privilege ............................................................................................. 12

9.  Tortious interference with contract:
    Elements of a cause of action for tortious interference with contract ............... 13

10. Tortious interference with contract:
    Effect of court order ....................................................................................... 15

11. Breach of fiduciary duty:
    Elements of a cause of action for breach of fiduciary duty............................... 16

12. Aiding and abetting breach of fiduciary duty
    Elements of a cause of action for aiding and abetting breach of fiduciary duty ................. 18

13. Unfair competition:
    Elements of a cause of action for unfair competition ....................................... 20

14. Trade Secret Misappropriation:
    Elements of a claim for misappropriation of trade secrets................................ 23

15. Trade Secret Misappropriation:
    Definition of a trade secret.. .......................................................................... 25

16.   Trade Secret Misappropriation:
      Definition of a trade secret - public availability. ................................................. 27

17.   Trade Secret Misappropriation:
      Definition of a trade secret - reverse engineering. .............................................. 27

18.   Trade Secret Misappropriation:
      Definition of a trade secret - reasonable measures to protect secrecy. ............................... 29

19.   Trade Secret Misappropriation:
      Acquisition by defendants Globus, Paul, or Kienzle. ........................................... 30

20.   Trade Secret Misappropriation:
      Acquisition by defendants Globus, Paul, or Kienzle – improper means. ........................... 31

21.   Trade Secret Misappropriation:
      Use by defendants Globus, Paul, or Kienzle. ..................................................... 33

22.   Computer Fraud And Abuse Act:
      Elements of a claim for a violation of the Computer Fraud and Abuse Act. ...................... 35

23.   Computer Fraud And Abuse Act:
      Protected computer. ............................................................................. 37

24.   Computer Fraud And Abuse Act:
      Exceeding authorization. ........................................................................ 38

25.   Computer Fraud And Abuse Act:
      Knowingly and with intent to defraud. ........................................................... 39

26.   Computer Fraud And Abuse Act:
      Furthered the fraud and obtained something of value. ............................................ 41

27.   Computer Fraud And Abuse Act:
      Loss aggregating to at least $5,000 in any 1-year period .................................... 42

28.   Computer Fraud And Abuse Act:
      Vicarious liability for defendant Globus. ....................................................... 42

29.   Computer Fraud And Abuse Act:
      Compensatory damages. .......................................................................... 44

30.   Computer Fraud And Abuse Act:
      Statute of limitations .......................................................................... 45

31. <u>Lanham Act:</u>
Elements of a claim for reverse passing off under the Lanham Act.................................... 46

32. <u>Lanham Act:</u>
False designation of origin. ................................................................................ 48

33. <u>Lanham Act:</u>
Likelihood of confusion. ..................................................................................... 49

34. <u>Lanham Act:</u>
Contributory Infringement (Passing Off)............................................................. 51

35. <u>Lanham Act:</u>
Inducement of Infringement (Passing off). ......................................................... 52

36. <u>Lanham Act:</u>
Defendants' Profits. ........................................................................................... 53

37. <u>Civil conspiracy:</u>
Elements of a cause of action for civil conspiracy. .............................................. 55

38. <u>Damages:</u>
Harm ................................................................................................................ 56

39. <u>Damages (all counts but CFAA & Lanham Act):</u>
Amaount awarded............................................................................................. 60

40. <u>Compensatory Damages (all counts but CFAA & Lanham Act):</u>
Determining Globus' profits. .............................................................................. 62

41. <u>Damages (all counts but CFAA & Lanham Act):</u>
Disgorgement - prejudgment interest ................................................................ 66

42. <u>Damages:</u>
Punitive damages ............................................................................................. 67

43. <u>Damages:</u>
Attorneys fees. ................................................................................................. 68

1.      **Notice or Knowledge:**
        **Duty of inquiry.**

The means of knowledge are ordinarily the equivalent in law to knowledge.  If it appears from the evidence in the case that a person had information that would lead a reasonably prudent person to make inquiry through which that person would surely learn the facts, then this person may be found to have had actual knowledge of those facts, the same as if that person had made such inquiry and had actually learned such facts.

That is to say, the law charges a person with notice and knowledge of whatever that person would have learned, on making such inquiry as it would have been reasonable to expect the person to make under the circumstances.

Knowledge or notice may also be established by circumstantial evidence.  If it appears that a certain condition has existed for a substantial period of time, and that the person had regular opportunities to observe the condition, then you may draw the inference that the person had knowledge of the condition.[1]

**Proposed Instruction:**
Given            _____
Modified         _____
Refused          _____

---

[1]      3 O'Malley et al., Federal Jury Practice and Instructions (Fifth) § 104.24 (West 2007) (unmodified).

2.      **Vicarious liability:**
        **How a corporation acts, generally.**

A corporation may act only through natural persons as its agents or employees. In general, any agents or employees of a corporation may bind the corporation by their acts and declarations made while acting within the scope of their authority delegated to them by the corporation or within the scope of their duties as employees of the corporation.[2]

**Proposed Instruction:**
Given            _____
Modified         _____
Refused          _____

---

[2]      Federal Jury Practice and Instructions § 103.31 (unmodified).

3.      **Breach of contract:**
        **Elements of contract formation, generally.**

In order for you to find for the plaintiff, you must find that the plaintiff has proved a

number of items by a preponderance of the evidence. Each of these items will be discussed

separately. But first, you need to know what constitutes a contract.  A contract is a legally

enforced agreement between two or more competent parties who have each promised to do, or

refrain from doing, some lawful act. [Whether oral or written, a contract is enforceable if its

terms clearly express what each party intended and expected.   If the terms of the agreement are

not definite and certain, any uncertainty may be clarified by examining the circumstances

surrounding the bargain. The basic elements that must be present to form a contract, each of

which must be proven by a preponderance of the evidence, are offer, acceptance, and

consideration.]

 [*Offer.* A valid offer expresses a willingness to enter into a contract. The offer gives

someone else the power to create the contract by making a valid acceptance of the offer and

thereby "sealing the deal."  In determining whether something was intended to be an actual offer,

it must be examined in context, and it must be examined in light of the surrounding

circumstances. You may find that one party's actions did constitute an offer when you consider

the custom established in a particular trade or business, the relation between the parties, and the

prior dealings between the parties.]

 [The offer must create the power to accept, and thereby create a binding contract. Other

statements may be mistaken for an offer. Some of these include:

        1.      an expression of intent to do something in the future (e.g., "I intend to sell
            my car for $5,000.00." The speaker is not bound to sell the car if the

      listener hands him or her the money. The speaker did not offer the car for sale.);

2.      a request for bids, or invitations for others to make offers;

3.      an invitation to negotiate, such as "Would you consider selling that?";

4.      a statement that a reasonable person would realize was not made in seriousness; and

5.      an "offer" made by an incompetent person is not a valid offer.]

[*Acceptance*. An acceptance is a clear indication that one agrees to be bound by the terms of the offer. The acceptance must be given within the time specified by the offer, or within a reasonable time if none is specified. The person to whom the offer was directed is the only person who may accept the offer.]

[If the parties have had previous dealings whereby certain methods of acceptance have become customary between them, then such will constitute a valid acceptance. An example of this would be a beginning of the requested performance upon receipt of the offer, rather than sending notice of acceptance of the offer first.]

[An acceptance must not change the terms of the offer, or impose any additional conditions. If it does change the terms of the offer, it will be considered a counter-offer, rather than an acceptance, and will therefore not create a contract.]

[*Consideration*. There must be consideration given by each party to a valid contract. That is, each party must have bargained to exchange his or her promise for another. The exchanged promises are either promises to perform or promises not to perform some act. The value or adequacy of the consideration given will not usually be examined, but the circumstances that show that both parties were capable of bargaining will be examined. In that sense, competent

people are free to contract, and even if one makes a bad deal, he or she is bound by the agreement.]

[One's promise to make a gift to another is not an enforceable promise since no consideration was given for that promise and thus no contract was created. There is, however, consideration where one promises to use his or her best efforts. Yet no consideration will be found upon which to base a contract if one party has promised to do something that he or she is already obligated to do, such as repay a preexisting debt.]

[However, if you find that a written contract exists between the plaintiff and the defendant, the contract was signed on behalf of both the plaintiff and the defendant, and contained language expressly providing that both parties "intended to be legally bound," then you are directed to find that the contract is not invalid or unenforceable for lack of consideration.][3]

A contract is a promise or set of promises for the breach of which the law gives a remedy or the performance of which the law in some way recognizes a duty. To be binding, a contract must include a manifestation of mutual assent to the terms and conditions of the contract. This is referred to as the "meeting of the minds." There must be a meeting of the minds; there can be no contract if only one party intends to be bound.

Because intent, including intent to be bound, is seldom susceptible to direct proof because it relates to a person's state of mind, the law presumes that a person intends the natural and probable consequences of that person's acts. The meeting of the minds or the mutual

---

[3]    PA SSJI (Civ.) 15.01 (modified as indicated).

manifestation of intent may be made wholly or partly by written or spoken words or by other acts or conduct, and an internal or unexpressed intention not to be bound is ineffective.

In determining whether or not there was any contract, you must decide whether or not there was a meeting of the minds between the parties with respect to the terms of the alleged oral agreement and a present intention to be bound.[4]

**Proposed Instruction:**
Given            _____
Modified         _____
Refused          _____

_____

[4]      Federal Jury Practice and Instructions  § 126.01 (unmodified).

6

4.     **Breach of contract:**
       **Contracts not to disclose, or confidentiality agreements, generally.**

The law also permits an employer to enter into agreements with its employees to prohibit

them from disclosing an employer's confidential information.  Certain information can be

protected by a non-disclosure or confidentiality agreement.  When an employer considers certain

information to be confidential and seeks to protect it, the employer can require its employees to

sign a non-disclosure agreement. [5]

An employer can prohibit an employee from forever disclosing this information under an

agreement. [6]

This information that is to be protected is considered by the employer to be confidential,

even though it may not qualify as a trade secret. [7]  Confidential information is defined as

information that is a particular secret of the employer, not a general secret of the trade, and must

be of peculiar importance to the conduct of the employer's business. [8]  The purpose behind the

---

[5]        Supported by *Bell Fuel Corp. v. Cattolico*, 544 A.2d 450, 460 (Pa. Super. Ct. 1988)
          ("Pennsylvania law provides an employer the right to the protection of its confidential
          information under certain defined circumstances.").

[6]        Supported by *Bell Fuel Corp.*, 544 A.2d at 458 ("[I]f the parties do execute an agreement
          that expressly provides such protection [of an employer's confidential information], it is
          not limited by the reasonableness criteria applicable to a restrictive covenant.").

[7]        Supported by *Iron Age Corp. v. Dvorak*, 880 A.2d 657, 665-66 (Pa. Super. Ct. 2005)
          ("Employers may protect information through a confidentiality agreement even if it is not
          considered a trade secret.  Certain information protected by agreement may be protected
          only be agreement, as it is considered by a business to be confidential, while not
          necessarily qualifying as trade secrets.").

[8]        Supported by *Bell Fuel Corp.*, 544 A.2d at 460 (Pa. Super. Ct. 1988) ("Generally, the
          information must be a particular secret of the employer, not a general secret of the trade,
          and must be of peculiar importance to the conduct of the employer's business.").

enforceability of non-disclosure agreements is to protect confidential information that has been compiled by the employer through a material investment of time and money of the employer.[9] The fact that an employer requires its employees to sign a non-disclosure agreement is evidence that the information is considered confidential.[10]  Thus, any information that Synthes sought to protect through its non-disclosure agreements with its employees and that is confidential may be protected by law through the enforcement of a non-disclosure agreement.

**Proposed Instruction:**
Given          _____
Modified       _____
Refused        _____

---

[9]      Supported by *Morgan's Home Equipment Corp. v. Martucci*, 136 A.2d 838 (Pa. 1957) ("[C]ustomer lists and customer information which have been compiled by such firms represent a material investment of employers' time and money.  This information is highly confidential and constitutes a valuable asset.  Such data has been held to be property in the nature of a 'trade secret' for which an employer is entitled to protection, independent of a non-disclosure contract, either under the law of agency or under the law of unfair trade practices.").

[10]      *Id.* at 843, n.5 ("[T]he presence of a non-disclosure covenant such as the one before us, does not create the right to protection but rather serves as evidence of the confidential nature of the data.").

**5.**  **Breach of contract:**
        **Breach of restrictive covenants, generally.**

If you find that Synthes had enforceable non-disclosure agreements with both Richard Kienzle and David Paul and Synthes also had an enforceable non-competition agreement with Richard Kienzle, you must then consider if Paul and/or Kienzle breached these agreements.

Synthes claims that David Paul and Richard Kienzle both breached non-disclosure agreements when they disclosed Synthes' trade secrets, and confidential and proprietary information and then also used some or all of that information at Globus.  Synthes also alleges that Richard Kienzle violated his non-compete agreements with Synthes by working for Globus, who is a competitor of Synthes'.

A breach of contract occurs when a party to the contract fails to perform any contractual duty of immediate performance or violates an obligation, engagement, or duty and that breach is material.  A breach does not have to be defined in a contract.

[Not every performance, however, is to be considered a breach of the contract.  If you find that the nonperformance was immaterial, and thus the contract was substantially performed, you must also find that a breach of the contract has not occurred.] [11]

**Proposed Instruction:**
Given          _____
Modified       _____
Refused        _____

---

[11]     PA SSJI (Civ.) 15.06 (modified as indicated).

6. **Breach of contract:**
   **Elements of a cause of action for breach of restrictive covenants.**

Synthes must prove three basic propositions to succeed in its claims against David Paul and Richard Kienzle for breach of their non-disclosure agreements and against Richard Kienzle on his non-competition agreements.

Synthes must prove the following:

1. Contract, including its essential terms – that Synthes and Paul, and Synthes and Kienzle entered into valid non-disclosure agreements and that Synthes and Kienzle entered into a valid non-competition agreement or agreements;

2. Breach of a duty imposed by the contract – that David Paul and Richard Kienzle breached the non-disclosure agreements and that Kienzle breached his non-competition agreement; and

3. Resultant Damage – that Paul and Kienzle's breaches caused damages to Synthes.[12]

**Proposed Instruction:**
Given          _____
Modified       _____
Refused        _____

---

[12] Modification supported by *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) (a cause of action for a breach of contract requires the showing of "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages").

7.     **Tortious interference with contract:**
       **Generally.**

Synthes claims that Globus intentionally interfered with employment agreements Synthes had with its employees.

One who intentionally interferes or otherwise intentionally causes a third party not to perform a contract with another is responsible to the other for the loss he or she suffered as a result of the breach of contract.

One who intentionally induces or otherwise intentionally prevents another from performing a contract with a third person or makes the performance of the contract more expensive is responsible to the other for the loss he or she suffered as a result of the prevention or interference with the contract.

[One who purposely induces or otherwise purposely causes a third person not to enter into or continue a prospective contractual relation with another is responsible to the other for the loss he or she suffered as a result of the prevention or interference with the contractual relationship.]

A person induces another when he or she forces that other to choose one course of conduct rather than another. [13]

**Proposed Instruction:**
Given          _____
Modified       _____
Refused        _____

---

[13]     PA SSJI (Civ.) 13.18 (modified as indicated).

**8.** **Tortious interference with contract:**
**Lack of privilege.**

I have determined as a matter of law that the Defendant Globus was not privileged to

intentionally induce or otherwise cause Synthes' employees not to perform their contracts with

Synthes.[14]

**Proposed Instruction:**
Given          _____
Modified       _____
Refused        _____

_____

[14]    An existing contract that is not terminable at will is an interest that cannot be lawfully
interfered with solely on the basis of the competitor's privilege.  Restatement (Second) of
Torts § 768 comment a ("But an existing contract, if not terminable at will, involves
established interests that are not subject to interference on the basis of competition
alone.").  Competition is not considered proper interference when it is applied to induce a
party to breach a contract.  *Id.* comment h ("The rule that competition is not an improper
interference with prospective contractual relations . . .  does not apply to inducement of
breach of contract"); *Id.* comment i ("An employment contract…may be only partially
terminable at will. Thus it may leave the employment at the employee's option but
provide that he is under a continuing obligation not to engage in competition with his
former employer. Under these circumstances a defendant engaged in the same business
might induce the employee to quit his job, but he would not be justified in engaging the
employee to work for him in an activity that would mean violation of the contract not to
compete."); *see also* Restatement (Second) of Torts § 767 comment a ("Section 768 . . .
deals specifically with the question of whether competition is proper or improper
interference with contractual relations, either existing or prospective.").

9.    <u>Tortious interference with contract:</u>
      **Elements of a cause of action for tortious interference with contract.**

To recover for tortious interference with contract, Synthes must prove by the fair weight of the evidence:

1.    The existence of a contractual relation – that Synthes had employment agreements, including non-competition agreements and non-disclosure agreements with its employees;

2.    Defendant's purpose or intent to harm the plaintiff by preventing the relation from occurring – that Globus acted with an intent to harm the contractual relation between Synthes and its employees; and

3.    Damages resulting from defendant's conduct – that Synthes suffered harm as a result of Globus' actions.[15]

An intent to harm is established if Globus knew its actions would be certain or substantially certain to interfere with the existing contract between Synthes and its employees.[16] You may consider the following factors in determining whether Globus' interference was improper:

---

[15]    Modification supported by *The Prudential Ins. Co. of America v. Stella*, 994 F. Supp. 318, 322 (E.D. Pa. 1998) ("In order to prevail on a claim for interference with contractual relations, the plaintiff must plead and prove four elements: (1) the existence of a contractual relation; (2) defendant's purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of any privilege or justification on the part of the defendant; and (4) damages resulting from defendant's conduct.").

[16]    Modification supported by *Total Care Systems, Inc. v. Coons*, 860 F. Supp. 236, 241 (E.D. Pa. 1994) ("As with intentional torts generally, intent in this case may be shown where the actor knows an injury is certain or substantially certain to occur as a result of his action.").

1.      the nature of Globus' conduct;

2.      Globus' motive;

3.      the interests of Synthes with which Globus' conduct interferes;

4.      the interests of Globus which it sought to advance by its conduct;

5.      the social interest in protecting the freedom of action of Globus and the

        contractual interests of Synthes;

6.      the proximity or remoteness of Globus' conduct to the interference; and

7.      the relationship between Synthes and Globus.[17]

**Proposed Instruction:**
Given           _____
Modified        _____
Refused         _____

---

[17]    Modification supported by *ID Security Systems Canada, Inc. v. Checkpoint Systems, Inc.*,
        249 F. Supp. 2d 622, 674-76 (E.D. Pa. 2003) (Restatement (Second) of Torts § 767 has
        been "explicitly acknowledged as the framework under which Pennsylvania courts
        evaluate improper purpose on tortious interference claims" and citing it with approval for
        the basis for a jury charge); Restatement (Second) of Torts § 767 ("[I]n determining
        whether an actor's conduct in intentionally interfering with a contract…of another is
        improper or not, consideration is given to the following factors:  (a) the nature of the
        actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's
        conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social
        interests in protecting the freedom of action of the actor and the contractual interests of
        the other, (f) the proximity or remoteness of the actor's conduct to the interference and
        (g) the relations between the parties.").

14

**10.   Tortious interference with contract:**
       **Effect of court order.**

Synthes claims that Globus either violated or assisted two former Synthes employees, Bell and Walden, in violating a court order that prohibited them from soliciting business for Globus and promoting Globus products or otherwise competing with Synthes in the territories where they used to work for Synthes.

Because evidence of a court order and a finding of contempt has been introduced in this case, I must instruct you on court orders and civil contempt findings.  If you find that Globus acted in violation of the court order or assisted others to violate the court order, it is not an excuse or defense for Globus to claim that it acted innocently or without the intent to violate the court order.

When faced with civil contempt, the intent of the party who was responsible for an act prohibited by a court order does not matter.[18]  It has been said that "an act does not cease to be a violation of a law and of a decree merely because it may have been done innocently."[19]

**Proposed Instruction:**
Given          _____
Modified       _____
Refused        _____

---

[18]     Supported by *Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 148 (3d Cir. 1994) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) (holding that "it matters not with what intent the defendant did the prohibited act…an act does not cease to be a violation of a law and of a decree merely because it may have been done innocently"); *Thompson v. Johnson*, 410 F. Supp. 633, 640 (E.D. Pa. 1976) (prohibited acts done inadvertently or on good faith do not alone preclude finding of contempt)).

[19]     *Id.*

**11.**     <u>Breach of fiduciary duty:</u>
           **Elements of a cause of action for breach of fiduciary duty.**

       Synthes claims that David Paul and Richard Kienzle, while employees of Synthes,

breached their fiduciary duties that they owed to Synthes.

---

       <u>An employee owes his or her employer a fiduciary duty and a duty of loyalty.</u>[20]   This

<u>means that an employee</u> is required to act with the utmost good faith in carrying out the interests

of his or her <u>employer</u> [principal].   [The agent] <u>An employee</u> violates that duty when he or she

has a personal interest in the dealings that might affect his or her judgment or fails to act only for

the <u>employer's</u> [principal's] benefit.

       To award damages to [the plaintiff] <u>Synthes</u> in this action, you must find that [the

plaintiff] <u>Synthes</u> has demonstrated by the fair weight of the evidence <u>that</u>:

                 1.      [that the defendant] <u>Paul and/or Kienzle</u> negligently or intentionally failed

                         to act in good faith and solely for the benefit of [the plaintiff] Synthes in

                         all matters for which Paul and/or Kienzle was employed;

                 2.      [that the plaintiff] <u>Synthes</u> suffered an injury; and

---

[20]      Supported by *Katz v. Food Sciences Corp.*, 2001 WL 1022986, * (E.D. Pa. 2000) ("There can be no doubt that an employee owes a duty of loyalty to his employer and in all matters, affecting the subject of this employment, he must act with the utmost good faith in the furtherance and advancement of the interest of his employer.") (citing *Sylvester v. Beck*, 178 A.2d 755, 757 (Pa. 1962); Restatement (Second) of Agency §§ 387, 391).

3.      [that the agent's] <u>Paul's and/or Kienzle's</u> failure to act solely for [the

plaintiff's] <u>Synthes'</u> benefit was a real factor in bringing about [the

plaintiff's] <u>Synthes'</u> injuries.[21]

**Proposed Instruction:**
Given          _____
Modified       _____
Refused        _____
_____
[21]      PA SSJI (Civ.) 4.16 (modified as indicated).

17

**12.**  **Aiding and abetting breach of fiduciary duty:**
**Elements of a cause of action for aiding and abetting breach of fiduciary duty.**

Synthes claims that Globus, David Paul, and Richard Kienzle substantially assisted and encouraged other Synthes employees to breach their fiduciary duties to Synthes.

An employee owes his or her employer a fiduciary duty and a duty of loyalty.[22]  This means that an employee is required to act with the utmost good faith in carrying out the interests of his or her employer.  An employee violates those duties when he or she has a personal interest in the dealings that might affect his or her judgment or fails to act only for the employer's benefit.[23]  Other individuals or entities who knowingly assists a fiduciary, in this case an employee, in committing a breach of trust is himself guilty of tortious conduct and is subject to liability for the harm thereby caused.[24]

To award damages to Synthes in this case for aiding and abetting a breach of fiduciary duty, Synthes must prove by a fair weight of the evidence that:

---

[22]   Supported by *Katz v. Food Sciences Corp.*, 2000 WL 1022986, *5 (E.D. Pa. 2000) (stating that "there can be no doubt that an employee owes a duty of loyalty to his employer and in all matters, affecting the subject of this employment, he must act with the utmost good faith in the furtherance and advancement of the interest of his employer") (*citing Sylvester v. Beck*, 178 A.2d 755, 757 (Pa. 1962); Restatement (Second) of Agency §§ 387, 391).

[23]   *Id.*; *see also* PA SSJI (Civ.) 4.16.

[24]   Modification supported by Restatement (Second) of Torts §874, comment c ("A person who knowingly assists a fiduciary in committing a breach of trust is himself guilty of tortious conduct and is subject to liability for the harm thereby caused.").

1.   Synthes employee or former employee breached the fiduciary duties he or she owed to Synthes by failing to act in good faith and solely for the benefit of Synthes in all matters for which he or she was employed;

2.   Globus, David Paul, or Richard Kienzle knew that the Synthes employees breached his or her fiduciary duties to Synthes; and

3.   Globus, David Paul, or Richard Kienzle substantially assisted or encouraged that Synthes employee to effect his breach of fiduciary duty to Synthes.[25]

**Proposed Instruction:**
Given          _____
Modified       _____
Refused        _____

---

[25]   Modification supported by *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 417-48 (E.D. Pa. 2006) ("The elements of a claim of aiding and abetting breach of fiduciary duty under Pennsylvania law are:  (1) a breach of fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor; and, (3) substantial assistance or encouragement by the aider and abettor in effecting that breach.").

**13.**     <u>Unfair competition:</u>
**Elements of a cause of action for unfair competition.**

Synthes claims that Globus has committed acts of unfair competition actionable at law and for which Globus is liable.

---

Unfair competition includes those forms and methods of competition which have been declared unlawful by the federal and state statutory law and state common law, as well as a residual category encompassing other business practices which, while not unlawful under current law, have been determined to be unfair. As a general matter, if the means of competition are otherwise tortious with respect to the injured party, they will also ordinarily constitute an unfair method of competition.[26]

Under Pennsylvania law, certain tortious conduct has been found to be unfair for the purposes of a claim for unfair competition. This conduct includes passing off, misappropriation of trade secrets, misrepresentation, unlawful use of confidential information, tortious interference with contract, aiding and abetting breach of fiduciary duty, and improper inducement of another's employees.[27]   Again, if the means of competition are otherwise tortious with respect to Synthes, they will also ordinarily constitute an unfair method of competition.

---

[26]     Supported by *ID Security Sys. Canada Inc. v. Checkpoint Sys., Inc.*, 249 F. Supp. 2d 622, 688-89 (E.D. Pa. 2003); Restatement (Third) of Unfair Competition § 1 comment g ("As a general matter, if the means of competition are otherwise tortious with respect to the injured party, they will also ordinarily constitute an unfair method of competition.").

[27]     Supported by *Id.;* also supported by *Synthes (U.S.A.) v. Globus Medical, Inc.*, 2005 WL 2233441, *8-9 (E.D. Pa. Sept. 14, 2005) (citing *ID Security Sys. Canada, Inc. v. Checkpoint Sys., Inc.*, 249 F. Supp. 2d 622, 688 (E.D. Pa. 2003); *Albee Homes, Inc. v. Caddie Homes, Inc.,* 207 A.2d 771 (Pa. 1965); *Morgan's Home Equip. Corp. v. Martucci,*

Passing off, when someone misrepresents his own goods or services as being someone else's, and reverse passing off, when someone misrepresents someone *else's* goods or services as being his *own,* can be tortious conduct to form the basis for unfair competition.[28]

Misappropriation of trade secrets, which could constitute unfair competition, first requires the existence of trade secrets that were acquired through improper means, a confidential relationship, or other circumstances giving rise to a duty not to use or disclose the trade secrets without permission,[29] and that were then used by without authorization and caused harm to another.[30]

The act of tortiously interfering with the contractual relation of another can constitute unfair competition; that is, when one intentionally interfered or otherwise intentionally caused a third party not to perform its contract with another.[31]  If the interference involves a violation of a

---

136 A.2d 838 (Pa. 1957); *Goebel Brewing Co. v. Esslingers, Inc.,* 95 A.2d 523 (Pa. 1953)).

[28]   Supported by *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003).

[29]   Modification supported by *Moore v. Kulicke & Soffa Indus.*, 318 F.3d 561, 566 (3d Cir. 2003) ("One who discloses or uses another's trade secret, without a privilege to do so, is liable to the other if (a) he discovers the secret by improper means, or (b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him."), and ABA Model Jury Instructions: Business Tort Litigation § 8.2 (4th ed. 2005) ("(2) that defendant acquired the trade secret (a) by using improper means, (b) through a confidential relationship with plaintiff, or (c) under other circumstances giving rise to a duty not to use or disclose the trade secret without plaintiff's permission.").

[30]   Federal Jury Practice and Instructions § 127.10 (citing *Rohm & Haas Co. v. Adco Chem. Co.*, 689 F.2d 424 (3d Cir. 1982)).

[31]   Supported by *ID Security Sys. Canada, Inc. v. Checkpoint Sys., Inc.,* 249 F. Supp. 2d 622, 688 (E.D. Pa. 2003) (stating that tortious interference with contract is a basis for unfair competition); Restatement (Second) of Torts § 767.

court order, remember that it is no defense that in violating or assisting another to violate a court order, the actor claims to have acted mistakenly.[32]

Aiding and abetting breach of fiduciary duty can constitute tortious conduct to support a claim for unfair competition.  Aiding and abetting breach of fiduciary duty occurs when one substantially assists or encourages another to breach his fiduciary duty owed to a third party and with the knowledge that the fiduciary duty was breached.[33]

The improper inducement of another's employees can constitute unfair competition when the actor either engages in the systematic inducement of another's employees to leave their present employment when the actor induces another's employees for the purpose of having the employees commit wrongs, such as disclosing their former employer's trade secrets or confidential information or enticing away his customers, the injured employer is entitled to protection.[34]

**Proposed Instruction:**
Given              _____
Modified           _____
Refused            _____

---

[32]     Supported by *Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 148 (3d Cir. 1994) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) (holding that "it matters not with what intent the defendant did the prohibited act…an act does not cease to be a violation of a law and of a decree merely because it may have been done innocently"); *Thompson v. Johnson*, 410 F. Supp. 633, 640 (E.D. Pa. 1976) (prohibited acts done inadvertently or on good faith do not alone preclude finding of contempt)).

[33]     Supported by Restatement (Third) of Unfair Competition § 1 comment g ("As a general matter, if the means of competition are otherwise tortious with respect to the injured party, they will also ordinarily constitute an unfair method of competition.").

[34]     Supported by *CGB Occupational Therapy v. RHA Health Servs.*, 357 F.3d 375, 388-89 (3d Cir. 2004).

**14.**   **<u>Trade Secret Misappropriation:</u>**
        **Elements of a claim for misappropriation of trade secrets.**

Synthes alleges that it had trade secrets which Defendants Globus, Paul, and Kienzle

acquired and used without authorization, causing Globus to benefit from such use or disclosure.

---

You are to determine whether any trade secrets have been misappropriated by defendants.

In order to establish a trade secret violation, plaintiff has the burden of proving by a

preponderance of the evidence that:

(1) trade secrets existed;

(2) defendants acquired those secrets as a result of <u>improper means</u>, a confidential

relationship, <u>or other circumstances giving rise to a duty not to use or disclose the trade secrets

without plaintiff's permission;</u>[35]

(3) defendants used the secret information without authorization of plaintiff;

---

[35]     Modification supported by *Moore v. Kulicke & Soffa Indus.*, 318 F.3d 561, 566 (3d Cir. 2003) ("One who discloses or uses another's trade secret, without a privilege to do so, is liable to the other if (a) he discovers the secret by improper means, or (b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him."), and ABA Model Jury Instructions: Business Tort Litigation § 8.2 ("(2) that defendant acquired the trade secret (a) by using improper means, (b) through a confidential relationship with plaintiff, or (c) under other circumstances giving rise to a duty not to use or disclose the trade secret without plaintiff's permission.").

(4) plaintiff suffered harm as a direct and proximate result of the defendants' use or disclosure of plaintiff's trade secret, or defendants gained from such use or disclosure.[36]

**Proposed Instruction:**
Given            _____
Modified        _____
Refused         _____

---

[36]     Federal Jury Practice and Instructions § 127.10 (citing *Rohm & Haas Co. v. Adco Chem. Co.*, 689 F.2d 424 (3d Cir. 1982)) (modified as indicated).

**15.**   <u>**Trade Secret Misappropriation:**</u>
   **Definition of a trade secret..**

A trade secret is any formula, pattern, device, or compilation of information used in a business that affords a demonstrable competitive advantage to the person who knows the secret. The subject matter of a trade secret must, of course, be secret, and must not be public knowledge in the trade or business.  Matters of general knowledge in an industry cannot be a trade secret. Trade secret protection is lost if the secret is disclosed to the public.  <u>A trade secret does not need to be embodied in a commercial product.  For example, a trade secret can exist for a product still in development or a process that does not complete a fully finished product.</u>[37]

In determining whether Synthes has proven by a preponderance of the evidence that it possessed specific, identifiable trade secrets, you may consider the following factors:

(1)  The extent to which the information was known outside of Synthes' business;

(2)  The extent to which it was known by employees and others involved in Synthes' business;

(3)  The extent of measures taken by Synthes to guard the secrecy of the information;

(4)  The value of the information to Synthes and its competitors;

(5)  The amount of effort or money expended in developing the information;

---

[37]   Modification supported by *In re International Endoscope Mfg., Inc.,* Civ. No. 86-118, 1986 WL 11613 (E.D. Pa. Oct. 14, 1986) (Trade secret protection can exist "although production has not yet begun and even if the particular process does not complete a fully marketable product.").

(6)  The ease or difficulty with which the information could be properly acquired or duplicated by others.[38]

**Proposed Instruction:**
Given          _____
Modified       _____
Refused        _____

_____

[38]    Federal Jury Practice and Instructions § 127.11 (modified as indicated).

**16.**   **Trade Secret Misappropriation:**
          **Definition of a trade secret - public availability.**

To determine that a trade secret exists you must first decide whether the information was indeed secret when defendants Globus, Paul, and Kienzle's allegedly wrongful conduct occurred. Matters that are generally known to the public at large or to people in a trade or business are not trade secrets. Nor can information be considered a trade secret if it would be ascertainable with reasonable ease from publicly available information.

Novelty is only required of a trade secret to the extent necessary to show that the alleged secret is not a matter of public knowledge. A trade secret may be no more than a slight mechanical advance over common knowledge and practice in the art.

[In addition, a trade secret must possess enough originality so that it can be distinguished from everyday knowledge.][39]

Absolute secrecy is not necessary for information to qualify as a trade secret. There is no requirement that no one else in the world possess the information. Rather, Synthes must demonstrate that the information was known only to it or to a few others who have also treated the information as a trade secret.[40]

**Proposed Instruction:**
Given            _____
Modified         _____
Refused          _____

---

[39]   Modification supported by *SI Handling Sys. Inc, v. Heisley*, 753 F.2d 1244, 1255 (3d Cir. 1985) ("Novelty is only required of a trade secret to the extent necessary to show that the alleged secret is not a matter of public knowledge. A trade secret may be no more than a slight mechanical advance over common knowledge and practice in the art.").

[40]   ABA Model Jury Instructions: Business Tort Litigation § 8.3.1 (modified as indicated).

27

17.   **Trade Secret Misappropriation:**
     **Definition of a trade secret – reverse engineering.**

There is no trade secret if, at the time of disclosure or use by defendants Globus, Paul, or Kienzle, the allegedly secret information could have been ascertained by inspection of sold articles or by reverse engineering.[41]   Reverse engineering means to take the finished product and determine the process used to manufacture it.[42]

**Proposed Instruction:**
Given          _____
Modified       _____
Refused        _____

---

[41]   Modification supported by *Moore*, 318 F.3d at 570-71 ("[U]nder Pennsylvania law, there is no trade secret if, 'at the time of disclosure or use by a misappropriator, the allegedly secret information could have been ascertained by inspection of sold articles or by reverse engineering.'").

[42]   Modification supported by *BIC Corp.*, 869 F.2d at 200 ("[R]everse engineered – i.e., garnered by beginning with the finished product and determining the process used to manufacture it.").

**18.    Trade Secret Misappropriation:**
**Definition of a trade secret - reasonable measures to protect secrecy.**

Synthes must prove that it took reasonable measures to protect the secrecy of its trade secret.  There is no precise definition of what "reasonable measures" are; what is reasonable depends on the situation.  Factors you may wish to consider in evaluating whether "reasonable measures" were taken could include the following:

(1) whether Synthes made it a practice to inform its employees or others involved with its business that the information was a trade secret and/or was to be kept confidential;

(2) whether Synthes required employees or others involved with its business to sign confidentiality agreements regarding the information or agreements not to compete in areas that could use the information;

(3) whether Synthes restricted access to the information on a "need to know" basis; and

(4) whether Synthes generally maintained tight security to protect the alleged trade secret, and did not voluntarily disclose it to others, except in confidence.[43]

**Proposed Instruction:**
Given            _____
Modified        _____
Refused         _____

_____

[43]     ABA Model Jury Instructions: Business Tort Litigation § 8.3.2 (unmodified).

**19.   <u>Trade Secret Misappropriation:</u>**
   **Acquisition by defendants Globus, Paul, or Kienzle.**

You must determine whether defendants Globus, Paul, or Kienzle acquired the trade secret under circumstances where defendants Globus, Paul, or Kienzle owed a duty to Synthes. Defendants Globus, Paul, or Kienzle would have a duty to Synthes if defendants Globus, Paul, or Kienzle acquired the information:

(1) by improper means;

(2) through a confidential relationship with Synthes; or

(3) under other circumstances where a duty is imposed by law.[44]

**Proposed Instruction:**
Given          _____
Modified       _____
Refused        _____

_____

[44]      ABA Model Jury Instructions: Business Tort Litigation § 8.4 (unmodified).

**20.**  **Trade Secret Misappropriation:**
**Acquisition by defendants Globus, Paul, or Kienzle – improper means.**

"Improper means" in acquiring a trade secret can arise in three types of circumstances:

(1) where defendants Globus, Paul, or Kienzle themselves have obtained the trade secret by their own improper conduct;

(2) where defendants Globus, Paul, or Kienzle have obtained the trade secret from a third party who acquired the trade secret by improper means; and

(3) where defendants Globus, Paul, or Kienzle induced another to obtain the trade secret by improper means.

It would be improper for defendants Globus, Paul, or Kienzle to acquire trade secret information by theft, bribery, trespass, misrepresentation, or corporate espionage, such as wiretapping.  It would also be improper for defendants Globus, Paul, or Kienzle to acquire the information from a third party who either used improper means to acquire the information or breached a duty of confidentiality in disclosing the information.  Where defendants Globus, Paul, or Kienzle have acquired the information from a third party in one of those circumstances, defendants Globus', Paul's, or Kienzle's conduct is only improper if defendants Globus, Paul, or Kienzle knew or should have known that it was acquiring a trade secret belonging to another. Lastly, it would be improper for defendants Globus, Paul, or Kienzle to induce another to either use improper means to acquire the information or to breach a duty of confidentiality that person owed to Synthes.

Since improper means can cover a wide variety of circumstances, it may be helpful to identify situations that the law would *not* consider "improper means."  It is not improper to acquire information through independent development, research of public resources (such as, for example, trade directories, patent filings, or even the telephone book), or purchase of a product

that contains trade secrets and then disassembling it to analyze those secrets (a process called "reverse engineering").  Similarly, a party who obtains information by mistake, or without knowledge or reason to know that the information is a trade secret, has not acquired the trade secret through improper means.[45]

**Proposed Instruction:**
Given            _____
Modified       _____
Refused         _____

_____

[45]      ABA Model Jury Instructions: Business Tort Litigation § 8.4 (unmodified).

**21.    <u>Trade Secret Misappropriation:</u>**
**<u>Use by defendants Globus, Paul, or Kienzle.</u>**

[If you decide that there was a confidential relationship between Synthes and those who formed or operated Globus, and that Synthes disclosed trade secrets to these people, then you must decide whether that trade secret information was misappropriated by defendants Globus, Paul, or Kienzle.]

A misappropriation has occurred if defendants Globus, Paul, or Kienzle used the trade secrets of Synthes to [make] <u>manufacture, market, or solicit</u> its products.  Mere conjecture or speculation as to this use is not sufficient.  Synthes must prove by a preponderance of the evidence that defendants Globus, Paul, or Kienzle used the trade secrets in [making] <u>manufacturing, marketing, or soliciting</u>[46] their products.

---

[46]    Modification supported by *Air Prods. & Chem. v. Inter-Chemical, Ltd.*, Civ. No. 03-CV-6140, 2003 U.S. Dist. LEXIS 23985, at *32 (E.D. Pa. Dec. 2, 2003) (holding that plaintiff is reasonably likely to succeed on the merits of its misappropriation claim where defendant wrongfully obtained trade secrets from plaintiff, and used them to "manufacture, market, and solicit their line of surfactant chemicals").

Synthes must also prove, by a preponderance of the evidence that defendants Globus, Paul, or Kienzle used Synthes' trade secret, and did not arrive at the trade secret through independent efforts or invention.[47] [48]

**Proposed Instruction:**
Given          _____
Modified       _____
Refused        _____

_____

[47]   Modification supported by *Moore*, 381 F.3d at 564 (affirming the jury instruction "If you find that the plaintiff has proven by a fair preponderance of the evidence that the defendant used the plaintiff's trade secret, and that the defendant did not arrive at the relevant wire bonding technique through independent invention, then you should find in favor of the plaintiff. On the other hand, if you determine that the wire bonding technique used by the defendant was developed through defendant's own independent efforts and invention, then you must find in favor of the defendant.").

[48]   Federal Jury Practice and Instructions § 127.13 (modified as indicated).

**22.**   **Computer Fraud And Abuse Act:**
     **Elements of a claim for a violation of the Computer Fraud and Abuse Act.**

Synthes alleges that Defendant Binder knowingly, and with the intent to defraud, exceeded the scope of his access to his Synthes work computer, and thereby obtained valuable data files which he then gave to Globus for Globus to use for its own benefit.

You are to determine whether defendants Globus or Binder have violated section 1030(a)(4) of the Computer Fraud and Abuse Act.  In order to establish a violation of the Computer Fraud and Abuse Act, Synthes has the burden of proving by a preponderance of the evidence that:

(1) defendants Globus or Binder have accessed a protected computer;

(2) have done so without authorization or by exceeding such authorization as was granted;

(3) have done so knowingly and with intent to defraud;

(4) as a result have furthered the intended fraud and obtained anything of value;[49] and

---

[49]   *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore*, 428 F.3d 504, 508 (3d Cir. 2005) ("A claim under CFAA § 1030(a)(4) has four elements: (1) defendant has accessed a protected computer; (2) has done so without authorization of by exceeding authorization or by exceeding such authorization as was granted; (3) has done so knowingly and with intent to defraud; and (4) as a result has furthered the intended fraud and obtained anything of value.").

(5) by the conduct described above caused loss to 1 or more persons during any 1-year period aggregating at least $5,000 in value.[50]

**Proposed Instruction:**
Given          _____
Modified       _____
Refused        _____

---

[50]   18 U.S.C. § 1030(g) ("A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B)."), and by 18 U.S.C. § 1030(a)(5)(B)(i) ("loss to 1 or more persons during any 1-year period aggregating at least $5,000 in value.").

23.     **Computer Fraud And Abuse Act:**
        **Protected computer.**

The term "protected computer" means a computer which is used in interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States.[51]

In determining whether Synthes has proven by a preponderance of the evidence that defendants Globus or Binder accessed a protected computer, you may consider:

(1)  whether the computer in question was party of an interstate computer network maintained as part of Synthes' nationwide business operations; or

(2)  whether the computer in question was used to send and receive e-mail throughout the country.[52]

**Proposed Instruction:**
Given           _____
Modified        _____
Refused         _____

---

[51]      18 U.S.C. § 1030(e)(2).

[52]      *Charles Schwab & Co. v. Carter*, No. 04-C-7071, 2005 U.S. Dist. LEXIS 21348, at *
          (N.D. Ill. Sept. 27, 2005) ("Although the Court agrees with Defendants' construction of
          the statute, dismissal is not warranted.  The Complaint alleges that Schwab . . . maintains
          an interstate computer network as part of its nationwide business operations.");
          *Credentials Plus, LLC v. Calderone*, 230 F. Supp. 2d 890, 906 (N.D. Ind. 2002)
          ("Plaintiff's computer was used to send and receive email to customers throughout the
          country and therefore qualifies as a protected computer under the CFAA.").

37

24. **Computer Fraud And Abuse Act:**
    **Exceeding authorization.**

The term "exceeds authorized access" means to access a computer with authorization and to use such access to obtain or alter information the computer that the accesser is not entitled so to obtain or alter.[53]

Defendant Binder's authority terminated if, without knowledge of Synthes, he acquired adverse interests or if he was otherwise guilty of a serious breach of loyalty to Synthes, or if he became an agent for a competitor. The Computer Fraud and Abuse Act was intended to encompass actions such as when employees take confidential and proprietary information from their former employer's computers for delivery to their new employers.[54]

**Proposed Instruction:**
Given          _____
Modified       _____
Refused        _____

----

[53]    18 U.S.C. § 1030(e)(6).

[54]    R. (Second) Agency § 112 (1958) ("Unless otherwise agreed, the authority of an agent terminates if, without knowledge of the principal, he acquires adverse interests or if he is otherwise guilty of a serious breach of loyalty to the principal."); *Shurgard Storage Centers v. Safeguard Self Storage*, 119 F. Supp. 2d 1121, 1125 (W.D. Wash. 2000) (adopting the R. (Second) definition of agency to determine when authorization ends). *Shurgard* has been cited with approval by *P.C. Yonkers,* 428 F.3d at 508, and by *Bro-Tech Corp. v. Thermax, Inc.*, No. 05-2330, 2006 U.S. Dist. LEXIS 7857 (E.D. Pa. Feb. 28, 2006) ("The thrust of Defendants' argument is that the kind of activity alleged here-- employees taking confidential and proprietary information from their former employer's computers for delivery to their new employers--does not violate the CFAA. While courts are in disagreement on this issue, this Court is persuaded by the view represented in *Shurgard*, holding that 'the CFAA was intended to encompass actions such as those allegedly undertaken' here.").

**25.    Computer Fraud And Abuse Act:**
**Knowingly and with intent to defraud.**

A person acts knowingly if he acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness.  Whether the defendants Globus or Binder acted knowingly may be proven by their conduct and by all of the facts and circumstances surrounding the case.

To act with the intent to defraud means to act willfully and with the intent to deceive, for the purpose of causing some loss to another.  To act willfully means to act knowingly and purposefully, with an intent to do <u>something to wrong one in his property rights by dishonest methods or schemes.</u>  [the law forbids, that is to say, with a bad purpose either to disobey or disregard the law.][55]

The question of whether a person acted with the intent to defraud is a question of fact for you to determine like any other fact question.  The question involves one's state of mind.  Direct proof of fraudulent intent is almost never available.  It would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past he committed an act with

---

[55]    Modification supported by *Shurgard Storage*, 119 F. Supp. 2d at 1126 ("The only element disputed by the defendant under § 1030(a)(4) that is not present under § 1030(a)(2)(C) is the intent to defraud.  The plaintiff argues for a broad definition of 'defraud' in this context, stating fraud is simply 'wronging one in his property rights by dishonest methods or schemes.' Plaintiff's Memorandum in Opposition, docket no. 11, at 9 (citing *McNally v. United States*, 483 U.S. 350, 358, (1987); *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)). . . .  This is the proper standard for fraud in this context, and construing the complaint in the light most favorable to the plaintiff, the complaint alleges that the defendant participated in dishonest methods to obtain the plaintiff's secret information. Therefore, the plaintiff has stated a claim upon which relief can be granted under 18 U.S.C. § 1030(a)(4).").

fraudulent intent.  Such proof is not required.  The ultimate fact of intent, though subjective, may

be established by circumstantial evidence, based upon a person's outward manifestations, his

words, his conduct, his acts, and all the surrounding circumstances disclosed by the evidence and

the rational or logical inferences that may be drawn from them.

Circumstantial evidence, if believed, is of no less value than direct evidence.  In either

case, the essential elements of the <u>cause of action</u> [crime] must be established <u>by a</u>

<u>preponderance of the evidence.</u> [beyond a reasonable doubt][56]

**Proposed Instruction:**
Given            _____
Modified         _____
Refused          _____

_____

[56]     2-40A Modern Federal Jury Instructions-Criminal § 40A.04 (Matthew Bender & Co.
         2006) (modified as indicated).

**26.** **Computer Fraud And Abuse Act:**
**Furthered the fraud and obtained something of value.**

Synthes must prove by a preponderance of the evidence [beyond a reasonable doubt] that defendants Globus or Binder used the computer to further the fraud, and as a result obtained something of value [as described in the indictment].

However, if all defendants Globus or Binder obtained was the use of the computer, and the value of such use is not more than $5,000 in any 1-year period, then you must find for the defendants Globus or Binder.  [the defendant not guilty][57]

**Proposed Instruction:**
Given            _____
Modified         _____
Refused          _____

_____

[57]       2-40A Modern Federal Jury Instructions-Criminal § 40A.04 (modified as indicated).

**27.**     **Computer Fraud And Abuse Act:**
            **Loss aggregating to at least $5,000 in any 1-year period.**

The term "loss" means any reasonable cost to any victim, including the cost of

responding to an offense, conducting a damage assessment, and restoring the data, program,

system, or information to its condition prior to an offense, and any revenue lost, cost incurred, or

other consequential damages incurred because of interruption of service.[58]

**Proposed Instruction:**
Given          _____
Modified       _____
Refused        _____

_____

[58]        18 U.S.C. § 1030(e)(11).

**28.**   **Computer Fraud And Abuse Act:**
        **Vicarious liability for defendant Globus.**

If Synthes proves by a preponderance of the evidence that defendant Binder violated the

Computer Fraud and Abuse Act, then defendant Globus may be held vicariously liable defendant

Binder's actions.  Examples of situations where defendant Globus could be held vicariously

liable under the Computer Fraud and Abuse Act for defendant Binder's actions are where:

(1) defendant Globus sought a competitive edge through the use of the information
obtained by defendant Binder;[59]

(2) defendant Globus directed defendant Binder's actions for its own benefit;[60] or

(3) defendant Globus urged or encouraged defendant Binder to commit the acts that
violated the Computer Fraud and Abuse Act.[61]

**Proposed Instruction:**
Given            _____
Modified         _____
Refused          _____

---

[59]    *P.C. Yonkers*, 428 F.3d at 510 ("Employers are increasingly taking advantage of the
CFAA's civil remedies to sue former employees and their new companies who seek a
competitive edge through wrongful use of information from the former employer's
computer system.").

[60]    *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 470 (S.D.N.Y. 2004) (denying
summary judgment on CFAA claim where plaintiff alleged that former employee, acting
at request of new employer, unlawfully obtained access to and downloaded information
from its computer systems for benefit of new employer).

[61]    *Garland-Sash v. Lewis*, Civ. No. 05-6827, 2007 U.S. Dist. LEXIS 20909, at *13
(S.D.N.Y. Mar. 26, 2007) (summarizing nationwide case law on vicarious liability for
employers under the CFAA).

**29.** **Computer Fraud And Abuse Act:**
      **Compensatory damages.**

Any person who suffers damage or loss by reason of a violation of the Computer Fraud and Abuse Act may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief.  If you find that defendants Globus or Binder are liable to Synthes for their conduct, then you should consider whether Synthes has suffered damage or loss as a result.  You should address the issue of damage and loss, however, only if you first determine that defendants Globus or Binder are liable to Synthes for a violation of the Computer Fraud and Abuse Act.

As with issues of liability, Synthes has the burden to prove to you that it has suffered damage or loss due to the wrongful conduct of defendants Globus or Binder.

The term "damage" means any impairment to the integrity or availability of data, a program, a system, or information.

The term "loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to an offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.[62]

**Proposed Instruction:**
Given          _____
Modified       _____
Refused        _____

---

[62]    18 U.S.C. §§ 1030(e)(8), (e)(11), (g).

**30.     Computer Fraud And Abuse Act:**
**Statute of limitations.**

The statute of limitations for CFAA claims is two years from either the date of the act

complained of or the date of the discovery of the damage.[63]

**Proposed Instruction:**
Given          _____
Modified       _____
Refused        _____

---

[63]     18 U.S.C. § 1030(g).  The federal discovery rule might not apply to the CFAA, because
"where Congress has intended that the statute of limitations not begin to run until the
plaintiff knew or should have known of both the injury and its cause, it has expressly said
so."*Ashcroft v. Randel*, 391 F. Supp. 2d 1214, 1220 (D. Ga. 2005); *see also Romero v.
Allstate Corp.*, 404 F.3d 212, 222 (3d Cir. 2005) ("Typically in a federal question case,
and in the absence of any contrary directive from Congress, courts employ the federal
'discovery rule' to determine when the federal claim accrues for limitations purposes.").

31.   **Lanham Act:**
      **Elements of a claim for reverse passing off under the Lanham Act.**

Synthes alleges that the defendants have improperly "passed off" Synthes' products as

Globus products in violation of federal law, or more specifically, that defendants have *reverse*

passed off Synthes products as Globus' products.

---

Passing off (or palming off, as it is sometimes called) occurs when someone

misrepresents his own goods or services as being someone else's.[64]  For example, passing off

occurs when someone sells counterfeit products that have brand-names that falsely indicate that

the products came from a famous manufacturer.

*Reverse* passing off occurs when someone misrepresents someone *else's* goods or

services as being his *own*.  Reverse passing off can be explicit, when the wrongdoer

affirmatively misrepresents the source of the product through false trademarks, words or

actions.[65]  Reverse passing off can also be implied, by removing or obliterating the original

trademark or other identifying information and distributing it in an unbranded state.[66]

---

[64]   Modification supported by *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S.
       23, 28 n.1 (2003).

[65]   Modification supported by *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S.
       23, 29 (2003) ("Reverse passing off, as its name implies, is the opposite: The producer
       misrepresents someone else's goods or services as his own.").

[66]   Modification supported by *Scheduled Airlines Traffic Offices, Inc. v. Objective, Inc.*, 180
       F.3d 583, 591 (4th Cir. 1999); *Smith v. Montoro*, 648 F.2d 602, 605 (9th Cir. 1981).

You are to determine whether any of Synthes' goods have been explicitly or implicitly reverse passed off by defendant Globus.  In order to succeed on its claim, Synthes must prove by a preponderance of the evidence that:

>  (1) the work at issue originated with Synthes;

>  (2) the origin of the work was falsely designated by defendant Globus;

>  (3) the false designation was likely to cause consumer confusion; and

>  (4) Synthes was harmed by defendant Globus' false designation of origin.[67]

**Proposed Instruction:**
Given          _____
Modified       _____
Refused        _____

---

[67]   Federal Jury Practice and Instructions § 159 Introduction (modified as indicated); *see also Syngenta Seeds, Inc. v. Delta Cotton Coop., Inc.*, 457 F.3d 1269, 1277 (Fed. Cir. 2006); *Lipton v. Nature Co.*, 71 F.3d 464, 473 (2d Cir. 1995).

**32.** <u>**Lanham Act:**</u>
**False designation of origin.**

[Any person who makes] <u>Defendant Globus falsely designated the origin of Synthes'</u> <u>goods if it made</u> commercial use of any word, term, name, or symbol, or combination therefore, or false or misleading description or representation of fact, <u>or removed or obliterated Synthes'</u> <u>name or mark in a manner</u> that <u>was</u> [is] likely to cause confusion as to the <u>actual</u> origin of <u>Synthes'</u> [that person's] goods.   [or services, or that misrepresented in advertising the nature, characteristics, qualities, or geographic origin of goods or services.][68]

<u>Synthes need not prove that anyone was actually confused by any passing off, just that</u> <u>the passing off was likely to cause confusion as to the actual origin of Synthes' goods.</u>[69]

**Proposed Instruction:**
Given          _____
Modified       _____
Refused        _____

---

[68]     Federal Jury Practice and Instructions § 159.26 (modified as indicated).

[69]     *Choice Hotels Int'l, Inc. v. Pennave Assocs., Inc.*, 45 Fed. Appx. 517, 519 (3d Cir. 2002) (rejecting defendant's assertion that actual confusion was required for liability or damages, including defendant's profits; "the text of the statute itself … does not require the actual confusion be proved for an award of damages.  Use of a mark which is 'likely to cause confusion' is all that is required by 15 U.S.C. § 1125(a)(1)(A).").

48

**33.**   <u>Lanham Act:</u>
     **Likelihood of confusion.**

In determining whether there was a likelihood of confusion caused by [the use of the term by both plaintiff and defendant] <u>defendant Globus</u> in connection with Synthes' instruments, you may draw on your common experience as citizens of the community.  In addition to the general knowledge you have acquired throughout your lifetimes, you may also consider:

[(1) the degree of similarity between the marks in question;]

<u>(1)</u> [(2)] the intent of defendant Globus in [adopting] <u>removing</u> the mark, that is, whether there was an intent to confuse;

<u>(2)</u> [(3)] the manner and method in which Synthes and defendant Globus used Synthes' instruments;

[(4) the similarity between the products in question;]

<u>(3)</u> [(5)] the degree of care likely to be used by purchasers;

<u>(4)</u> [(6)] other factors about the product that would trend to reduce any tendency to confuse the purchaser as to the source of origin of the product.

In light of these considerations and your common experience, you must determine if ordinary <u>customers</u> [consumers], neither overly careful nor overly careless, would be confused as to the origin of Synthes' instruments, upon encountering the [term] <u>instruments</u> as [the respective

parties have used it in connection with] <u>defendant Globus has represented them.</u>  No one factor

or consideration is conclusive, but each aspect should be weighed in light of the total evidence

presented at the trial.[70]

**Proposed Instruction:**
Given          _____
Modified       _____
Refused        _____

---

[70]     Federal Jury Practice and Instructions § 159.25 (modified as indicated).

**34.**     **Lanham Act:**
**Contributory Infringement (Passing Off).**

A person is liable for [trademark infringement] <u>reverse passing off</u>  by another if the person sells or supplies goods to another knowing or having reason to know that the other person will use the goods to [infringe the plaintiff's trademark] <u>reverse pass off the goods</u>.

<u>Here, Synthes alleges both that Globus itself passed off Synthes' instruments as Globus instruments, and also that Globus is liable for the conduct of its employees and third-party salespeople who, Synthes alleges, passed off Synthes' instruments as Globus' instruments.</u>

[Plaintiff] <u>Synthes</u> has the burden of proving each of he following by a preponderance of the evidence:

First: [Defendant] <u>Globus</u> sold or supplied [goods] <u>Synthes' instruments</u> to <u>its third-party salespeople</u>;

Second:  <u>Globus' third-party salespeople</u> used the [goods] <u>Synthes instruments</u> [defendant] <u>Globus</u> sold or supplied to [infringe plaintiff's trademark] <u>reverse pass off the instruments to customers and others as Globus' instruments</u>;

Third: [Defendant] <u>Globus</u> knew or should have known <u>its third-party salespeople</u> would [use] <u>reverse pass off</u> the [goods] <u>Synthes instruments</u> to [infringe plaintiff's trademark] <u>gain business for Globus</u>.[71]

**Proposed Instruction:**
Given            _____
Modified        _____
Refused         _____

---

[71]     Federal Jury Practice and Instructions § 159.23 (modified as indicated).

**35.**   **<u>Lanham Act:</u>**
   **Inducement of Infringement (Passing off).**

A person may be liable for [trademark infringement] <u>reverse passing off</u>  by another if the

person intentionally induced another to [infringe the trademark] <u>reverse pass off the product.</u>

<u>Here, Synthes alleges both that Globus itself passed off Synthes' instruments as Globus</u>

<u>instruments, and also that Globus is liable for inducing its employees and third-party salespeople</u>

<u>to passed off Synthes' instruments as Globus' instruments.</u>

First:  <u>Globus' third-party salespeople</u> [infringed the plaintiff's trademark] <u>reverse passed</u>

<u>off Synthes' instruments as Globus' instruments;</u> and

Second: [Defendant] <u>Globus</u> intentionally induced <u>its third-party salespeople</u> to [infringe

plaintiff's trademark] <u>pass off Synthes' instruments as Globus' instruments in order to gain</u>

<u>business for Globus.</u>[72]

**Proposed Instruction:**
Given          _____
Modified          _____
Refused          _____

---

[72]      Federal Jury Practice and Instructions § 159.24 (modified as indicated).

**36.**   <u>**Lanham Act:**</u>
        **Defendants' Profits.**

[In addition to actual damages, plaintiff] <u>Synthes</u> is entitled to any profits earned by [defendant] <u>Globus</u> that are attributable to the [infringement] <u>reverse passing off</u>.  [However, you may not include in any award of profits any amount that you included in determining actual damages].

<u>Even if Synthes does not prove that it sustained its own pecuniary harm, such as its own lost sales and profits, it would still be entitled to recover Globus' profits and the costs of the action.</u>[73]

Expenses are all operating [overhead] and production costs incurred in producing the gross revenue.  [Defendant] <u>Globus</u> has the burden of proving the expenses and the portion of the profit attributable to factors other than use of [the infringed trademark] <u>the passed off Synthes products</u> by a preponderance of the evidence.

---

[73]   Modification suggested by Court's July 12, 2007 summary judgment Order, #251, p. 12, citing 15 U.S.C. § 1117.

Unless you find that a portion of the profit from the [sale of the goods using the trademark] sales of Globus instruments or other products that arose as a result of the reverse passing off of the instruments is attributable to factors other than [use of the trademark] the reverse passing off, you must find that the total profit is attributable to the [infringement] reverse passing off.[74]

**Proposed Instruction:**
Given             _____
Modified          _____
Refused           _____

---

[74]       Federal Jury Practice and Instructions § 159.92 (modified as indicated).

**37.**   <u>Civil conspiracy:</u>
**Elements of a cause of action for civil conspiracy.**

Synthes alleges that Defendants Globus, Paul, Kienzle, and other former Synthes

employees conspired to commit the other wrongful acts described in this lawsuit.

You are to determine whether Globus, Paul, or Kienzle entered into a civil conspiracy.  In

order to establish a civil conspiracy, Synthes has the burden of proving by a preponderance of

the evidence that:

(1) a combination of two or more persons acting with a common purpose to do an

unlawful act or to do a lawful act by unlawful means or for an unlawful purpose;

(2) an overt act done in pursuance of the common purpose; and

(3) actual legal damage.[75]

**Proposed Instruction:**
Given   _____
Modified   _____
Refused   _____

---

[75]   *Levin v. Upper Makefield Twp.*, 90 Fed. Appx. 653, 667 (3d Cir. 2004) ("In Pennsylvania, to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage.").

**38.**  **Damages:**
        **Harm.**

You have just heard about the claims that Synthes is asserting against Globus in this action.  In each of these claims, proof that Synthes has suffered harm as a result of Globus' conduct is not required.

Harms flowing from these claims can come in many forms.[76]  Harm can be in the form of other financial losses, such as lost sales, lost profits, lost business opportunities[77] as well as lost goodwill, reputation or other intangible assets of the business. [78]  Often these types of losses are difficult to compute, so that a restitution measure of damages is employed to compensate a plaintiff.[79]  This measure is known as disgorgement.

---

[76]   Supported by *Ebright v. Shutter*, 386 A.2d 66, 68-69 (Pa. Super. Ct. 1978) (discussing losses of consideration paid and damage to contracting party's expectation interests); *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 565 (Pa. Super. Ct. 2004) (affirming grant of equitable accounting against former employee for full amount of his earnings with new employer for violation of the confidentiality provision of restrictive covenant).

[77]   Supported by *Santoro v. Morse*, 781 A.2d 1220, 1228 (Pa. Super. Ct. 2001) ("The impending loss of a business opportunity or market advantage may aptly be characterized as irreparable harm"); *see also Valley Forge Convention & Visitors Bureau v. Visitor's Services, Inc.*, 28 F. Supp. 2d 947, 951 (E.D. Pa. 1998) ("Economic losses include damages due to loss of customers, sales and profit").

[78]   Supported by *Valley Forge Convention & Visitors Bureau*, 28 F. Supp. 2d at 951 (stating that economic losses "also include loss of business reputation and goodwill"); *see also Ready Food Products, Inc. and  Great Northern Ins. Co. v. APV*, 1994 WL 1251171, *203 (Pa. Com. Pl. 1994) (finding that "damages for loss of goodwill and reputation are economic injuries") (excluding such damages under the economic loss doctrine in a products liability case); *Chrysler Credit Corp. v. B.J.M., Jr., Inc.*, 834 F. Supp. 813, 843 (E.D. Pa. 1993) ( "[T]he gist of the tortious interference with a business relationship is the intent to destroy plaintiff's good will and reputation").

[79]   Supported by *Ebright v. Shutter*, 386 A.2d 66, 68-69 (Pa. Super. Ct. 1978) ("By the very nature of covenants not to compete, damages in the nature of lost profits are difficult to establish with mathematical certainty and only reasonable certainty will be required.

Synthes has brought a claim for breach of contract against David Paul and Richard Kienzle.  The law recognizes that the breach of a restrictive covenant, as a non-disclosure or a non-compete agreement, inflicts irreparable harm on an employer, particularly upon the employer's relationships with its customers.[80]  Due to the nature of the interests being protected by the non-compete and non-disclosure agreements, the damages arising out of a breach of a covenant not to compete are difficult to compute with precision.[81]

Synthes has brought a claim for tortious interference with contractual relationships against Globus for interference with the contracts that Synthes has with its employees.  The law recognizes that tortious interference with contractual relations causes irreparable harm, particularly when the tortious conduct is directed at using another's confidential information and trade secrets.[82]

---

Often the reasonable certainty required may be fulfilled by looking to a restitutionary measure of damages.").

[80]  Supported by *John G. Bryant Co., Inc. v. Sling Testing and Repair, Inc.*, 369 A.2d 1164, 1167 (Pa. 1977) ("It is not the initial breach of a covenant which necessarily establishes the existence of irreparable harm but rather the threat of the unbridled continuation of the violation and the resultant incalculable damages to the former employer's business."); *Sparks Tune-Up, Inc. v. White*, Civ. A. No. 89-664, 1989 WL 41321, at *2 (E.D. Pa. Apr. 18, 1989) ("The violation of a covenant not to compete results in interference with customer relationships [that can cause] nonquantifiable damages.").

[81]  Supported by *Aiken Industries, Inc. v. Estate of Wilson*, 477 Pa. 34, 383 A.2d 808, 811-12 (Pa. 1978) (plurality decision) ("Damages arising out of a breach of a covenant not to compete are difficult to compute with precision."); *Vector Security, Inc. v. Stewart*, 88 F. Supp. 2d 395, 399 (E.D. Pa. 2000) ("[T]he harm caused by a breach of a covenant not to compete is difficult to assess for damages purposes.").

[82]  Supported by *Synthes v. Globus*, No. 04-1235, Order, July 12, 2007 (citing *Ecolaire, Inc. v. Crissman*, 542 F. Supp. 196 (E.D. Pa. 1982)).

Synthes has brought a claim for breach of fiduciary duty against David Paul and Richard Kienzle and a claim for aiding and abetting breach of fiduciary duty against Paul, Kienzle, and Globus.  Under these sorts of claims, the party asserting the claim need not show the existence of damages other than the breaching party's receipt of a benefit.  Because retention of this benefit would be inequitable, the party asserting the claim may receive damages in the form of restitution.[83]

Synthes has brought a claim for unfair competition against Globus.  To the extent this is based on Globus' theft and use of Synthes' proprietary information, any harm or detriment suffered by Synthes exists by a showing that Globus merely used this very information in competition.[84]  A claim for unfair competition can be based on the other claims in the case, such as tortious interference with contract, misappropriation of trade secrets, aiding and abetting

---

[83]     Supported by *Synthes v. Globus*, No. 04-1235, Order, July 12, 2007 (citing *Rothman v. Specialty Care Network, Inc.*, 2000 U.S. Dist. LEXIS 15433, *8-9 (E.D. Pa. 2000).

[84]     Supported by *Synthes v. Globus*, No. 04-1235, Order, July 12, 2007 (citing *Air Products and Chemicals, Inc. v. Inter-Chemical, LTD, et al*, 2003 U.S. Dist. LEXIS 23985, *35).

breach of fiduciary duty, and violations of the Lanham Act.[85]  These claims, as just discussed, do

not require that Synthes prove that it has been harmed.[86]

**Proposed Instruction:**
Given          _____
Modified       _____
Refused        _____

---

[85]     Supported by *Synthes (U.S.A.) v. Globus Medical, Inc.*, 2005 WL 2233441, *8-9 (E.D. Pa. Sept. 14, 2005) (*citing. ID Security Sys. Canada, Inc. v. Checkpoint Sys., Inc.,* 249 F. Supp. 2d 622, 688 (E.D. Pa. 2003);  *Albee Homes, Inc. v. Caddie Homes, Inc.,* 207 A.2d 771 (Pa. 1965); *Morgan's Home Equip. Corp. v. Martucci,* 136 A.2d 838 (Pa. 1957); *Goebel Brewing Co. v. Esslingers, Inc.,* 95 A.2d 523 (Pa. 1953)); Restatement (Third) of Unfair Competition § 1 comment g ("As a general matter, if the means of competition are otherwise tortious with respect to the injured party, they will also ordinarily constitute an unfair method of competition.").

[86]     Supported by *Synthes v. Globus*, No. 04-1235, Order, July 12, 2007 (citing 15 U.S.C. § 1117 (Lanham Act § 35(a)) (reverse passing-off); *Warner-Lambert Co. v. BreathAssure, Inc.*, 204 F.3d , 92 (XX) (Lanham Act); *Fishkin v. Susquehanna Partners, G.P.*, 2007 WL 853769, *1 (E.D. Pa. 2007) (citing *'Rohm & Haas Co. v. Adco Chem. Co.*, 689 F.2d 424, 429-30 (3d Cir. 1982)) (trade secret misappropriation); *John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.*, 369 A.2d 1164, 1167 (Pa. 1977) (breach of contract); *Ebright v. Shutter*, 386 A.2d 66, 68-69 (Pa. Super. Ct. 1978) (breach of contract); *Ecolaire, Inc., v. Crissman*, 542 F. Supp. 196 (E.D. Pa. 1982) (tortious interference with contract); *Jacobson & Co., Inc. v. International Environment Corp.*, 235 A.2d 612 (Pa. 1967) (tortious interference with noncompetition agreement); *Air Products and Chemicals, Inc. v. Inter-Chemical, LTD. et.al.,* 2003 U.S. Dist. LEXIS 15098, *9 (E.D. Pa. 2003) (unfair competition)).

**39.    Damages (all counts but CFAA & Lanham Act):
Amount awarded.**

If you find that defendants Globus, Paul, or Kienzle are liable to Synthes for their

conduct, then you should consider whether Synthes has suffered monetary damages as a result.

You should address the issue of damages, however, only if you first determine that defendant is

liable to Synthes on any of the bases we have discussed previously.

The amount of money that you award may not be speculative and must be proven by the

Plaintiff with a reasonable degree of certainty.[87]  The damages you award may be measured in

the form of compensation to Synthes based upon Defendants' gains; this is called disgorgement

of profits.[88]  Plaintiff has the right to elect which remedy it is seeking.  Here Synthes has elected

to seek the remedy of disgorgement of Globus' profits, and the law supports this choice on every

cause of action that Synthes has brought against Globus.[89]   If you conclude that some or all of

---

[87]    Supported by *ATACS Corp. v. Trans World Communications, Inc.*, 155 F.3d 659, (3d
Cir. 1998) ("[I]f damages are difficult to establish, an injured party need only prove
damages with reasonable certainty…at a minimum, [this means] a rough calculation that
is not too speculative, vague or contingent upon some unknown factor….applying the
reasonable certainty standard does not preclude an award of damages because of some
uncertainty as to the precise amount of damages incurred.") (internal citations omitted).

[88]    2 Callman on Unfair Comp., Tr. & Mono. § 14:42 (4th ed.) ("Unless a specific injury to
the plaintiff can be established, such as lost sales, his loss is not the proper basis for
assessing damages.  In such cases the defendant's gain may serve as the proper point of
reference in determining the extent of the plaintiff's loss.").

[89]    Supported by *Synthes v. Globus*, No. 04-01235, Order, July 12, 2007 (citing 15 U.S.C.
§ 1117 (Lanham Act § 35(a)) (reverse passing-off); *Warner-Lambert Co. v.
BreathAssure, Inc.*, 204 F.3d , 92 (XX) (Lanham Act); *Fishkin v. Susquehanna Partners,
G.P.*, 2007 WL 853769, *1 (E.D. Pa. 2007) (citing '*Rohm & Haas Co. v. Adco Chem.
Co.*, 689 F.2d 424, 429-30 (3d Cir. 1982)) (trade secret misappropriation); *John G.
Bryant Co., Inc. v. Sling Testing & Repair, Inc.*, 369 A.2d 1164, 1167 (Pa. 1977) (breach
of contract); *Ebright v. Shutter*, 386 A.2d 66, 68-69 (Pa. Super. Ct. 1978) (breach of
contract); *Ecolaire, Inc., v. Crissman*, 542 F. Supp. 196 (E.D. Pa. 1982) (tortious

Defendants' profits were caused by Defendants' unlawful actions, you may award that amount as

damages for the harm to the Plaintiff.

**Proposed Instruction:**
Given           _____
Modified        _____
Refused         _____

---

interference with contract); *Jacobson & Co., Inc. v. International Environment Corp.*, 235 A.2d 612 (Pa. 1967) (tortious interference with noncompetition agreement); *Air Products and Chemicals, Inc. v. Inter-Chemical, LTD. et.al.,* 2003 U.S. Dist. LEXIS 15098, *9 (E.D. Pa. 2003) (unfair competition); *Rothman v. Specialty Care Network, Inc.*, Civ. No. 00-2445, 2000 U.S. Dist. LEXIS 15433, at *8 (E.D. Pa. Oct. 12, 2000) (breach of fiduciary duty)).

**40.    Compensatory Damages (all counts but CFAA & Lanham Act):
Determining Globus' profits.**

    If you find the Defendants liable for trade secret misappropriation, civil conspiracy,

breach of contract, tortious interference with contract, common law unfair competition, breach of

fiduciary duty, or aiding and abetting breach of fiduciary duty, you must determine the amount

of the Defendants' gain, if any, attributable to the Defendants' actions that makes them liable

under these claims.  Synthes is entitled to recover the defendant's net profits attributable to any

such misconduct.

    Synthes has the burden of establishing the Defendants' gross sales from the products

whose sales were the result of any liable conduct.  The Defendants have the burden of proof to

establish any amounts that should be deducted from these gross sales, in order to determine the

amount of net sales.  The Defendants may put on evidence that certain sales were not reasonably

related to the liable conduct.  The Defendants may also put on evidence that certain expenses

should be deducted from the sales because the costs were incurred to design, make, and sell the

product. [90]  The Defendants must establish that any supposedly deductible costs are directly

---

[90]    *Supra Medical Corp. v. McGonigle*, 955 F. Supp. 374, 381 (E.D. Pa. 1997) (citing
Restatement (Third) of Unfair Competition, §§ 37 and 45 as authority for the claim of
common law trade secret misappropriation under Pennsylvania law); *Stage v. Hamilton*,
119 A. 466, 469 (Pa. 1923) (the policy behind placing this burden on the defendant is that
"the defense is ann affirmative one, but perhaps also because the items of the account
were peculiarly within the knowledge of defendant."); Restatement (Third) of Unfair
Competition, § 45, cmt. f.. "*Relief measured by defendant's gain*… The general rules
governing accountings of profits are applicable in trade secret actions.  The plaintiff is
entitled to recover the defendant's net profits.  The plaintiff has the burden of establishing
the defendant's sales;  the defendant has the burden of establishing any portion of the
sales not attributable to the trade secret and any expenses to be deducted in determining
net profits.  The rules governing the deductibility of expenses and the allocation of
overhead are analogous to those stated in § 37, Comments g and h, on accountings in

attributable to the products at issue, and are not attributable to other products or business

endeavors, such as future products.[91]

In determining the amount of the Defendants' profits attributable to any liable conduct, it

is appropriate to deduct from the relevant sales revenues only those costs and expenses that were

directly incurred in the creation and sale of those products.[92]  It is appropriate *not* to deduct from

---

actions for trademark infringement"); Restatement (Third) of Unfair Competition, § 37, cmt. g ("The accepted rule is that the plaintiff bears the burden of proving the defendant's gross sales and the defendant has the burden of proving deductible costs."); Restatement (First) of Torts, § 748, Cmt. a ("When the defendant is shown to have earned income by means of the conduct which subjects him to liability, the burden is on him to establish that this income does not represent his net profits and what deductions should be made in order to ascertain his net profits."); 1A C.J.S. *Accounting* § 52 (2007) ("The burden is on the defendant to prove any amount the defendant claims entitled to recover, including credits or allowances claimed in offset or reduction of the plaintiff's demand."); *c.f. Synthes v. Globus*, No. 04-1235, 2005 U.S. Dist. LEXIS 19962, at **25-26 (E.D. Pa. Sept. 14, 2005) (discussing Pennsylvania courts' citation to and reliance on Restatement (Third) of Unfair Competition for unfair competition claims).

[91]    Restatement (Third) of Unfair Competition., § 37 note h ("Only costs directly attributable to the production of the infringing goods are deductible.  Variable costs and any portion of general expenses that would not have been incurred if the infringing goods had not been produced are properly deductible.  If the manufacture and marketing of the infringing goods caused no increase in general expenses, no portion should be deducted in calculating profits.  Thus, although normal accounting practice may allocate overhead and general expenses over all products, such an allocation is not necessarily appropriate for purposes of determining the net profits for which the defendant must account.); Restatement (Third) Unfair Competition, § 45 ("The rules governing the deductibility of expenses and the allocation of overhead [for trade secret misappropriation] are analogous to those stated in § 37, Comments g and h, on accountings in actions for trademark infringement.").

[92]    *Safway Steel Scaffolds Co. v. Clayton*, 413 Pa. 229, 234-35, 196 A.2d 378, 381 (Pa. 1964) (holding that in an accounting of defendants' profits pursuant to consent order arising from alleged improper competitive use of misappropriated confidential information, proper method of calculation required deducting only the "direct, out-of-pocket costs directly and specifically attributable" to the projects at issue, and excluding all general overhead, administrative and other costs "not definitely and specifically concerned" with these projects); 11 A.L.R. 4th 12, "Proper measure and elements of damages for

revenues any general overhead, administrative and other costs that would have been incurred if the Defendants had not made the sales at issue.[93]

However, the compensation paid by Globus to any trade secret infringer or conscious wrongdoer, including any individual defendant, should not be deducted from revenues to determine the amount of profits to be disgorged.[94]

In addition, it is not appropriate to deduct from Defendants' profits any amount Defendants have paid in taxes on those profits.[95]

---

misappropriation for trade secret," § 15 (1982) (citing *Safway Steel Scaffolds*); Restatement (First) of Torts, § 748, Cmt. i (If the manufacture and marketing of the infringing goods causes no increase in the general expense, no part of it is to be allocated to them, even though such a practice would be bad from the point of view of cost accounting or business policy. Only when the manufacture or marketing of the infringing goods increases the joint expenses is it proper to allocate a part of them to these goods. If the rule were otherwise, the defendant would be permitted to retain gains made by his own wrongdoing. The apportionment of joint expenses in the absence of such an increase would reduce the cost of the non-infringing goods and would thus permit gain for the defendant from his tortious conduct.").

[93]     *Id.*

[94]     *Brooks v. Conston*, 364 Pa. 256, 262-63, 72 A.2d 75, 79 (Pa. 1950) (compensation paid to infringer or conscious wrongdoer should not be deducted from revenues in determining profit subject to an accounting), *citing,* among other things, Restatement (First) of Torts, § 748, Cmt. e.

[95]     Income tax paid by the defendant on the profits for which it is accountable should not generally be deducted in computing the defendant's liability. Since the defendant can ordinarily claim the amount paid under an accounting as a deductible business expense, it can recoup some or all of the income tax previously paid on the profits included in the award. Similarly, the plaintiff is ordinarily obligated to pay income tax on the recovery from the defendant. Thus, the denial of a deduction for income taxes paid by the defendant on the profits awarded to the plaintiff best implements the goals of compensating the plaintiff and preventing the unjust enrichment of the defendant. Taxes other than income tax that are attributable to the infringement are ordinarily included as deductible expenses. Restatement (Third) Unfair Competition, 37 comment g.

Only if you find that the Defendants have met their burden of proving that these amounts should be deducted from sales revenues should you consider those amounts in determining Defendants' amount of net profits attributable to their liable conduct.

**Proposed Instruction:**
Given          _____
Modified       _____
Refused        _____

**41.      Damages (all counts but CFAA & Lanham Act:**
**Disgorgement - prejudgment interest.**

To the extent that find that Synthes is entitled to the disgorgement of Globus' profits, you are also to consider whether Synthes is entitled to the pre-judgment interest on the amount you award in disgorgement.  Pre-judgment interest may be awarded when Globus has held money or property which belongs in good conscience to Synthes, and the objective is to force disgorgement of Globus' unjust enrichment.  In these cases, pre-judgment interest is part of the entire restitution necessary to avoid injustice, if you should find it should be awarded.[96]

**Proposed Instruction:**
Given            _____
Modified         _____
Refused          _____

---

[96]      *Kaiser v. Old Republic Ins. Co.*, 741 A.2d 748, 755 (Pa. Super. Ct. 1999).

**42.**   **Damages:**
      **Punitive damages.**

If you find that the acts of Globus, Paul, Kienzle, or Binder were willful, wanton, and maliciously done, then you may add to the actual amount of damages such amount as you shall agree is proper.  The purpose of punitive damages is not to compensate Synthes, but rather to punish Globus, Paul, Kienzle, or Binder and others from committing such acts in the future.

An act is willfully done if done voluntarily and intentionally and with specific intent to commit such an act.

An act is wantonly done if done in careless disregard of, or indifference to, the rights of the injured party.

An act is maliciously done, if prompted or accompanied by ill-will or such gross indifference to the rights of others as to amount to a willful act done intentionally without just cause or excuse.[97]

**Proposed Instruction:**
Given          _____
Modified       _____
Refused        _____

---

[97]      Federal Jury Practice and Instructions § 129.40.

**43.**  **Damages:**
    **Attorneys fees.**

If you should find from the preponderance of the evidence that Synthes is entitled to a

verdict for actual or compensatory damages for misappropriation of trade secrets, you may

consider whether the court should award reasonable attorney fees, expenses and costs to Synthes.

A court may award reasonable attorney fees, expenses, and costs to the prevailing party if

willful and malicious misappropriation exists.

An act is willfully done if done voluntarily and intentionally and with the specific intent

to commit such an act.

An act is maliciously done if prompted or accompanied by ill will or such gross

indifference to the rights of others as to amount to a willful act done intentionally without just

cause or excuse.[98]

**Proposed Instruction:**
Given            _____
Modified         _____
Refused          _____

---

[98]      12 Pa. Cons. Stat. § 5305 (2006).

<u>**CERTIFICATE OF SERVICE**</u>

I, Jacob Aaron Gantz, hereby certify that on this 16th day of July, 2007, I caused a true

and correct copy of the foregoing document to be served, by the Court's Electronic Case Filing

system, upon counsel for Defendants, as follows:

> Frederick A. Tecce
> John P. McShea
> McShea Tecce, P.C.
> The Bell Atlantic Tower, 28th Floor
> 1717 Arch Street
> Philadelphia, PA 19103


> _____/s/Jacob Aaron Gantz_____
> Jacob Aaron Gantz